CASE 83—ACTION ON CONTRACT—FEB. 15.

# Hall v. Alford.
# Hall v. Poteet.

APPEAL FROM KENTON CIRCUIT COURT.

1. ACTIONS—CONTRACTS MADE FOR ONE'S BENEFIT.—A sub-contractor may maintain an action in his own name upon a contract made by a contractor for his benefit with the owner for whom the house is being built.

2. SAME—STATUTE OF FRAUDS.—Where a contractor undertook to build a house and fell behind with his sub-contractors, an agreement between the owner and the sub-contractors that if the latter would continue to carry out their contracts with the contractor he (the owner) would see that they were paid, is upon an independent consideration and is not within the statute of frauds.

JAMES P. TARVIN, FOR THE APPELLANT.

1. The promise sued on was not established.
2. Such a promise, if it had been established, was within the statute of frauds.

Citations:    Birchell v. Neaster, 36 O. St., 331; Gill v. Herrick, 111 Mass., 501; Haverly v. Mercur, 78 Penn. St., 257; Fornham v. Davis (Me.) 1887, —— Atl. Rep., 725; Warner v. Willoughby, 60 Conn., 468; Tanquary v. Walker, 47 Ill. App., 451; Dequis v. Improvement Co., 88 Mich., 103; Baker v. Ingersoll, 39 Mich., 158; Morrisey v. Kinsey, 27 Neb., 662; Noyes v. Humphries, 11 Gratt. (Va.), 636; Armstrong v. Flora, 3 Mon., 43; Waggener v. Bell, 4 Mon., 7; Thwaits v. Curl, 6 B. M., 472; Smith v. Fah, 15 B. M., 356; Lieber, Griffin & Co. v. Levy, 3 Met., 292.

D. A. GLENN, FOR THE APPELLEES.

1. The petition sets out a promise on the part of Hall to Dye to pay the latter's orders.
2. This promise is not within the statute of frauds; it is a promise to pay the promisor's own debt.

3. The promise can be sued on by him for whose benefit it was
   made.
   Citations:   Eastwood v. Kenyon, 11 Adolph. & Ellis, 438;
   Bishop on Contracts, sec. 1264; Brown on Statute of Frauds,
   sec. 186-188; Hall v. Marston, 17 Mass., 575; Brewer v. Dyer, 7
   Cush., 337; Lucas v. Chamberlain, 8 B. M., 276; North v.
   Robinson, 1 Duv., 71; Jones v. Letcher, 13 B. M., 363; Williams
   v. Rogers, 14 Bush, 776.

JAMES P. TARVIN, FOR THE APPELLANT, filed a petition for a re-
   hearing in each case in which it was insisted that the motion
   for a new trial was not in time.

   Citations:   Civil Code, sec. 997; Blanch, &c., v. John, &c., 6
   Ky. Law Rep., 367.

L. A. GLENN, IN REPLY.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellant contracted with W. H. Dye to build three
dwelling houses for him.   Dye subcontracted for the paint-
ing on the houses with appellee Alford, and for the stone
and brick work with appellee Poteet; and these suits
were instituted by appellees against W. H. Dye and ap-
pellant, seeking a personal judgment against each of them,
and to subject the property of appellant to a mechanic's
lien for labor performed and material furnished under
their contract with Dye.   They seek to hold appellant
liable—First, on a direct promise, made to appellees, to
pay for the material furnished and work done by them
under their contracts with defendant Dye; and, second,
upon an independent promise, alleged to have been made
to the defendant Dye, to discharge the indebtedness con-
tracted by him with appellees in performing the work
under their subcontracts.

Appellant defends on the ground that he had made no
such promise, either to appellees or to his co-defendant
Dye, and that, if made, the agreement was a mere parol

contract to pay the debt of Dye, and is within the statute of frauds, and therefore not enforceable.

The right of a third person to sue on a contract made for his benefit between others, to the consideration of which he is a stranger, is a subject about which there is great conflict in the authorities. The English doctrine is that a stranger to the consideration can maintain no action on the contract; but, on the other hand, in most of the American States it is agreed that a third party for whose benefit a contract is made may sue upon it, if it clearly appears that it was a direct purpose of the contract to benefit him, and a legal duty was owing to him by the promisee. See Hendrick v. Lindsay, 93 U. S., 143; National Bank v. Grand Lodge, 98 U. S., 123. And this doctrine has been recognized by this court in a number of cases. See Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340 [25 Am. St. R., 536, 12 S. W., 554, and 13 S. W., 249]; Dodge's Adm'r v. Moss, 82 Ky., 441; Mize v. Barnes, 78 Ky., 506; Smith v. Lewis. 3 B. Mon., 229; Allen v. Thomas, 3 Metc., (Ky.), 198, [77 Am. Dec., 169]; and Lucas v. Chamberlain, 8 B. Mon., 276.

And it follows, therefore, that if appellant agreed with Dye, at the time he entered into the contract, that he was to pay the contract price for the work directly to the subcontractors, the agreement was enforceable. But it seems to us that the proof on this point is insufficient to establish such a contract. The testimony shows that appellant entered into a written contract to build these houses, and that the contract price therefor was to be paid on completion in accordance with the plans and specifications. Dye testifies that, after the making of this written contract, there was a verbal agreement, by which appellant agreed to advance a part of the contract price as the work

progressed, and that afterwards the contract was still further modified, at the instance of appellant, by which it was agreed that Dye should give orders as the work went on to the various subcontractors, drawn on appellant, and that the money should be paid directly to them on presentation of these orders to appellant.

On this point appellant testifies that it became evident to him, as work progressed, that Dye could not comply with his contract, for lack of money to pay his hands, and that he was therefore compelled to change the terms of the contract, and advance money; that some time in April, he began to suspect that Dye was falling behind with his subcontractors; and that, in order to protect the subcontractors, and see that they got the money due on the contract, he agreed to pay directly to them on orders drawn upon him by Dye.

It seems to us that this proof is wholly insufficient to show any promise or agreement on the part of appellant to discharge the obligations of Dye to the subcontractors for work performed or materials furnished. At the time this contract was made a large amount of the contract price had already been paid, and the reason why appellant desired to pay on orders was to protect himself and the subcontractors from Dye's improvidence. There is no pretense that there was any agreement or understanding that Dye was to be released from his responsibility on his contracts with appellees, and that they should henceforth look to appellant alone; and appellees' claim against appellant on this ground must fail for lack of proof, as the proof shows that this agreement was carried out, and that after that he paid no part of the contract price to Dye.

As to the question of the direct undertaking by appellant to pay the debts of appellees, the proof is stronger.

Appellee Poteet testifies that, about the time he commenced work as a subcontractor, he asked appellant about his pay; that appellant said it "would be all right; to go about the work," but that he did not promise to pay for it; that, about the 20th day of May, Dye gave him an order upon appellant for $200; and that, in company with one Spinks, a material man, he presented this order and demanded payment. At the time he presented it, he notified appellant that Dye was getting behind with him in his pay, and wanted to know if he was safe for his money; that, if appellant·would not see that he got his money, he would quit work, and take other proceedings about it; that appellant told him not to get scared, but to go ahead with the work, and that he would see that all subcontractors were paid for the work performed, and the material men for materials furnished, and directed appellee to go on with the work; and that, relying upon this promise, he went on and completed his job. This testimony of Poteet is substantially corroborated by the evidence of Spinks, Sullivan, and Mullins, and about the same agreement was made with appellee Alford.

The legal question is, are the promises so made by appellant a direct and independent undertaking on his part, or do they fall within the statute of frauds, as a parol promise to pay the debts of another?

There has been a great deal of confusion and apparent contradiction in the adjudication of courts of last resort on this question, but we are inclined to the opinion that the better and more modern doctrine is to exclude all but promises of pure suretyship from the scope of the statute. If any direct benefit is to be obtained to the promisor, he must be understood to intend an undertaking which is not within the statute, although its performance may have the

effect of discharging the debt of another.  See 8 Am. & Eng. Enc. Law, p. 682; Brandt on Suretyship, section 56, and authorities there cited.

The weight of the evidence in this case conduces to prove that appellant induced appellees to go on with the work, and furnish materials, by his promises to pay therefor; and these promises were made exclusively for his own benefit, the original contractor being insolvent, and therefore unable to complete appellant's houses.

Under these facts, the promises of appellant to appellees were distinct and independent obligations, for which he received a valuable consideration, and are not within the statute of frauds.  For the reasons indicated, the judgment must be affirmed.