## White v. Carter Dry Goods Company, et al.

## Carter Dry Goods Company v. Vogel, et al.

(Decided November 22, 1927.)

Appeals from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Sales.—In action at law to recover for goods sold to defendants jointly at their special instance and request, questions of agency or trusteeship, involving determination of liability as between defendants, were immaterial.

2. Partnership.—In action to recover purchase price of goods sold to defendants jointly, defendant, left in charge and conducting business, who pleaded partnership with codefendant, held liable for price of goods sold and used in carrying on business, notwithstanding claim that he had no control over business and conducted it merely as agent for codefendant operating business as trustees for his creditors.

3. Sales.—In action for price of goods alleged to have been sold to defendants jointly, sole issue with regard to liability of defendant, who claimed to have acted merely as trustee or agent for creditors of codefendant conducting business, was whether such trustee agreed to purchase of goods in question and promised to pay for them and whether plaintiff in making sale extended credit to him.

4. Sales.—In action against several defendants on alleged joint oral promise to pay for goods sold and delivered to one of defendants, question whether codefendant agreed to purchase and promised to pay and whether plaintiff partly extended credit to him held for jury.

5. Frauds, Statute of.—If credit was extended to several persons in joint sale, fact that person to whom goods were delivered remained bound did not render other's undertaking collateral, so as to enable him to avoid liability under statute of frauds.

J. S. LUSCHER for White.

WOODWARD, WARFIELD & HOBSON for Carter Dry Goods Company.

GIFFORD & STEINFELD for Vogel.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming in part and reversing in part.

Carter Dry Goods Company sued C. J. White, A. R. Vogel, and John J. Vogel, on account for $3,828.64, for goods, wares and merchandise, alleging a sale to the defendants jointly at their special instance and request and

for which they promised to pay. White answered, denying his own promise to pay but otherwise admitting the sale of the merchandise as alleged and further admitting that he and John J. Vogel were partners at the time the goods were furnished, and further stating that it was agreed between the plaintiff and him and John J. Vogel that the goods were to be delivered to him and John J. Vogel, but that John J. Vogel was to pay for the goods, and that the plaintiff intended to and did look alone to John J. Vogel and not to him. John J. Vogel and A. R. Vogel, as individual members of Vogel Bros., a partnership, answered, traversing the petition and the allegations of White's answer, and affirmatively alleging that during the time covered by the account they were as a matter of accommodation acting as trustees for White by assisting him in conserving his cash resources and distributing them for him among his creditors, but without assuming any control over the conduct of his business, all of which was known to the plaintiff.

In a jury trial a peremptory instruction was given in favor of A. R. Vogel, and a verdict in favor of John J. Vogel was returned by the jury, who also found in favor of the plaintiff as against C. J. White. Carter Dry Goods Company appeal from the judgment in favor of John J. Vogel, and C. J. White also appeals from the judgment against him, both appeals being prosecuted on the same record. Both appellants insist that the court erred in its instructions to the jury. Appellee upholds the instructions given, and in addition argues that he was entitled to a peremptory instruction and that in no event can appellants be prejudiced by the form of the instructions. The facts are these:

C. J. White conducted retail dry goods stores in the cities of Frankfort and Shelbyville, Ky., and about the first of the year 1923 became financially involved. He was owing a large account to Vogel Bros., who were engaged in the wholesale shoe business in Louisville. J. J. Vogel called upon White and told him that unless he turned his stock over to a trustee for the benefit of his creditors, his firm would take legal action. White agreed to do this, and a meeting of the creditors was called and all of them assented thereto. Vogel and White then entered into a verbal agreement, the details of which are lacking. It does appear, however, that White was left in charge of the store and paid $100 a month for conduct-

ing it; that he incurred no further indebtedness, but did purchase for cash such goods as were essential to continue the business; that he kept an account of his sales and expenses and reported to John J. Vogel on each Monday morning, and then made such purchases as were necessary, paying cash therefor, and delivered the balance of the proceeds of the preceding week's sales to Vogel, who deposited it in a Louisville bank to the credit of "C. J. White, Vogel Bros. & Co., Trustee," and as this fund accumulated Vogel distributed it among the creditors, signing the name above indicated to the checks. In this way 48 per cent. of the old indebtedness was paid by the 1st of April, 1924, at which time Vogel procured for White a settlement of the remainder of the old indebtedness by a payment of 12 per cent. to some of the creditors and of 24 per cent. to others, including the Carter Dry Goods Company. It appears that thereafter White purchased goods regularly on account, and in a sense conducted the business, for which he was paid $100 per month, but paid none of the bills or expenses except that of light and heat and the retention of his own salary. He kept an itemized account of these and remitted all of the other funds received by him on each Monday morning to Vogel, who deposited same to the account above indicated and who paid all bills and accounts. White claims that all purchases were charged by the seller to C. J. White and Vogel Bros. and duplicate invoices made, one of which was mailed to Vogel Bros.; that upon the arrival of a bill of goods he would check up the invoice and mail it to Vogel, who was also paid $100 per month for his services. The business ran along in this way until December, 1925, when the firm again became involved, and this suit followed.

The credit manager of the Carter Dry Goods Company, Mr. Bradbury, testifies: That White had been a customer of his house for some time. That under the trust arrangement of January, 1923, his firm continued to sell White for cash, but extended no credit until the 7th of February, 1924, some two months before White made the compromise settlement with his old creditors. On that date, February 7th, Mr. John J. Vogel called at his office and told him "that he had come to arrange a line of credit." "He said he would be responsible for the credit if we granted it, and that we could charge the goods to C. J. White and Vogel Bros. That at the time

White had nothing to base a credit on, and we would not have extended any credit to him." Elaborating this, he says: "Mr. J. J. Vogel came in and came back to see me about selling some goods to the Frankfort store on credit. Of course I told him I could not sell Mr. White personally, and which was entirely reasonable to him under the circumstances, so he said it would be satisfactory to charge the goods to C. J. White and Vogel Bros., and that he personally would see that the bills were paid, that the checks would come from him, J. J. Vogel." That at no time was this authority withdrawn. That on one occasion the bills were getting pretty big, and he called Mr. Vogel over the telephone and mentioned that fact, and that Mr. Vogel said "that he was in touch with the business and that it was perfectly all right; anything that Mr. White bought could go right on out, and be charged the same as we had always been charging it, C. J. White and Vogel Bros. That beginning with February, 1924, the goods were charged to C. J. White and Vogel Bros., and invoices were made and one sent to each." The floor manager of Carter Dry Goods Company testifies that in the early part of 1924, Mr. Vogel came in the store and inquired for Mr. Bradbury; that he told him he was in the office; that Mr. Vogel went in, and later he met him coming out, "and I said, 'Well, did you get everything fixed up all right?' and he said, 'Yes; you know a man can't sell goods if he hasn't got them. I am going to see that he gets enough merchandise to do some good.' " He further states that Mr. White was then in the house waiting to purchase goods. Frank J. Dounhauer, a salesman for plaintiff, states that as a rule he would wait upon Mr. White; that on one occasion, in the spring of 1924, Mr. White and Mr. Vogel came in together, and that Mr. Vogel walked back in the office and Mr. White waited until Mr. Vogel returned and thereupon purchased some goods, Mr. Vogel assisting in the selection.

Mr. J. J. Vogel denies the conversation with Bradbury, denies that he talked with him over the telephone, and denies that he ever had any interest in the business or that he exercised any authority over the matter except to assist in the distribution among the creditors, all of which was done for the mutual accommodation of both parties; he knew nothing about the dry goods business and never assisted in the selection of any goods, and denies the conversation with the floor manager. He

admits that his trusteeship continued until December, 1925, but makes no explanation of why it was continued after White compromised with his old creditors, nor gives any account of the arrangement they made between him and White, and makes· this explanation as to the first arrangement: That White was heavily indebted to his firm and paying nothing, and that he told him: " 'The only thing I will stand for is for you to turn over this stock to the benefit of the creditors. I will act as trustee for you if the creditors are satisfied, and no other way will I allow this store to run on;' and he agreed to that, and I called him up and told him to take stock. He took stock, and I came down here and seen the creditors here in Louisville. The creditors agreed to this, and the business was conducted as above indicated."

All checks were given in the name of "C. J. White, Vogel Bros., Trustee," and plaintiff understood that he was only trying to assist Mr. White and the creditors in adjusting the business. A. R. Vogel took no part in the transaction.

It is strongly insisted by White that under the proven facts Vogel Bros. were trustees either for himself or his creditors; that he had no control over the business and merely conducted it as agent for the trustees and therefore neither he nor the trust estate is liable for this debt, but that Vogel Bros. as trustees are individually liable therefor. On the other hand, J. J. Vogel contends that, while he was denominated a trustee he was not such in fact, but was only an agent for the distribution of White's funds among his creditors, and in no sense liable. However, it is not necessary for us to enter into a discussion of these questions, because the action is at law and is brought against the parties as individuals under an alleged express joint contract of purchase without reference to their status inter se. White pleads that he was a partner with Vogel; hence he is liable at all hazards. And if J. J. Vogel is liable as promisor as charged in the petition, his relation to White is immaterial, as he would remain liable whether or not he was White's agent, trustee, or partner, or trustee for White's creditors; hence, as to him, under the pleadings, the only issue to be determined by the jury was: Did he agree to the purchase and promise to pay plaintiff for the goods in question, and in making the sale did the plaintiff extend the credit to him? If so he

is liable, otherwise not, and this question should have been submitted in an appropriate instruction.

The given instructions submitted other issues and were clearly erroneous and prejudicial unless J. J. Vogel was entitled to a peremptory. As to this appellee argues that, as the goods were charged to C. J. White and Vogel Bros., and as plaintiff is still holding White liable for the debt, it is evident that some credit was extended to him, and that therefore the promise of J. J. Vogel is collateral. There is some authority for this position. See 25 R. C. L. 488, and the cases there cited. But we think the weight of authority and of reason is otherwise. The rule is thus stated in the footnotes to Sherman v. Alberts, 126 Am. St. Rep. 493:

"But in cases where the person to whom the goods were sold and delivered and the one who orally undertook to be bound for their price are sued together as joint original promisors, the action will not be defeated as to the latter by showing that credit for the goods was given partly to one and partly to the other defendant as the statute of frauds does not extend to a joint promise by two persons for the benefit of one of them. East Baltimore Lumber Company v. K'Nessett Israel Aushe S'Phard Congregation, 100 Md. 689, 62 A. 575, and Oldenburg & Dorsey v. Kelly, 102 Md. 172, 62 A. 576, 5 Ann. Cas. 841. It has been held that, in an action for goods sold to a third person on the request of another, there can be no recovery against the promisor where the goods were not charged to him on the seller's books. Such was the ruling in Bussel v. Sagor, 27 Misc. Rep. 810, 57 N. Y. S. 221, thus making the fact as to whom the goods were charged the sole test as to whether the promise was original or collateral. But the better rule and the one supported by the decided weight of authority is, that the fact that goods sold and delivered to a third person at the request of another were charged to such third person is to be considered in determining to whom the credit was given, but it is not conclusive"—citing a number of cases.

In Liesman v. Otto, 64 Ky. (1 Bush) 225, the seller refused to deliver certain goods purchased by a customer deemed insolvent, but did deliver them at the instance of

third parties on their promise to pay the price and their direction to charge the bill to them, which was done. Later the seller sued the purchaser and attached his goods. Failing to recover, the seller sued the promisor. It was held that, though the purchaser was bound for the debt, yet, as the credit was extended to the promisor, his interest was not collateral. Here, according to plaintiff's proof, the credit was extended to Vogel in a joint sale. If true, though White remained bound, this did not render Vogel's undertaking collateral. It follows that Vogel was not entitled to a peremptory instruction.

For this reason the judgment is affirmed as to White and reversed on the appeal of the Carter Dry Goods Company, and cause remanded for proceedings consistent with this opinion.