## Cole & Moore v. Aetna Casualty & Ins. Co.

Dec. 8, 1939.

J. D. Mocquot and Trimble & Trimble for appellant.

White & Clark for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellee, then plaintiff, sued the appellant partnership, one E. H. Hester and the City of Hopkinsville, alleging that on May 7, 1936, the partnership and Hester, contractors, were then engaged in constructing a sewage disposal plant for the City of Hopkinsville, and they and their employees, were operating and working under the terms and provisions of our Compensation Act.

On the day stated, appellee says it contracted in writing with "said defendants" to indemnify and protect them against liability which "said defendants might incur under the act through injuries to the employees of E. H. Hester, sub-contractor, while engaged in said construction work." The contract had been duly approved by the Board, and "said defendants" were fully covered by the contract.

Plaintiff said that defendants had agreed to pay $852.28 premium for said policies, but had only paid $149.35, thus leaving a balance due of $702.93, for which amount they asked judgment against the partnership and Hester. The city was the paymaster, and indebted to the contractors, but a satisfactory arrangement was made by court order releasing the city from liability.

Counsel for the partnership moved the court to require plaintiff to file its alleged written contract; the motion was sustained and copies filed. The partnership also demurred to the petition and same was overruled. Without waiving demurrer, the partnership answered. In this answer they deny, almost categorically, the allegations of the petition in respect of the partnership, and the defendant Hester.

They denied that the partnership had ever agreed for the insurance, or that they or either of them were to pay, or that defendants bound themselves to pay the sum named, or any sum, for the contract. They also denied that the partnership suffered, or could have suffered any loss or incurred any liability for any injuries "to the said Hester's employees." They say they were engaged in no work with their co-defendant Hester, in construction or building under a contract with the city, or at all. Hester did not plead, and it seems that the pleadings mentioned above completed the issues.

Under instructions which are not complained about in appellants' brief, a jury found as follows: "We the jury find for plaintiff as against Cole and Moore in the sum of $702.93," and the court entered judgment accordingly. Motion for a new trial was overruled and appeal granted.

It is said in brief that since Hester failed to answer, judgment went against him by default; we fail to find such order. It was stipulated that if the partnership owed appellee any sum, that alleged in the petition was correct; the sole issue on trial was whether appellant partnership was liable for the unpaid balance.

Appellant submits its right to a reversal on the sole ground that the court should have sustained its motion for a directed verdict in its favor, made at the close of plaintiff's and all the testimony. This argument is based solely on the contention that the partnership was not bound or obligated to pay the premiums on the issued and accepted policies, issued in the name of Hester,

because the agreement, if any, was not in writing, and therefore governed by Section 470, Kentucky Statutes, which provides:

"No action shall be brought to charge any person * * *

"4. Upon a promise to answer for the debt [or] default * * * of another; * * * unless the promise * * * be in writing, and signed by the party to be charged therewith."

It is admitted that appellant was the chief contractor for the sewage disposal plant, and Hester a subcontractor. The work was done under a W. P. A. grant or loan, and consequently governed by such rules and regulations as were required to be incorporated into all such contracts with regard to labor. One of these was, that it was necessary for contractors and sub-contractors to carry indemnity insurance, particularly compensation insurance.

Policies of the sort in question here, were not issued by the local agent, but upon statement made by the applicant, and sent to the state office at Louisville. It appears that the practice was, and is, for the company to consider the statement and if it agrees to contract, then to issue the policies, and upon delivery an initial payment becomes due. The remainder is based on payrolls and the character of the work; generally the final payment is due upon an audit, if one is desired.

Jones, the local agent, testified that he was approached by Hester, who applied for the policies. The question of payment of premiums arose, but was not discussed at length. Jones did not apply for the insurance at once. He wanted to "see where he stood," and to ascertain what kind of contract existed between the contractor and the sub-contractor. He states that on the same day, and in a short time after Hester had left the office, Moore, one of the partners, came in and asked if he had issued the policies. Jones answered that he had not; that he did not issue policies; that Moore said, "Go ahead and issue the policies, we will pay for them; we have to have them." Jones mailed the application to Louisville, and in about one day thereafter delivered the policies.

The bookkeeper testified that the agency had theretofore had a small account with Hester, and when the

policies were delivered she charged them to Hester's account, and at the time added the name of "Cole and Moore," so that the premiums on the policies were charged to Hester, Cole and Moore. On July 1, 1937, a bill for the initial premium was sent to Hester, who gave it his o. k. and on July 5, it was paid by check of Cole and Moore.

Hester testified that he was one of two sub-contractors on the work; that he was required to carry the insurance, because using "re-employment" labor. He says he applied to Jones, but he did not issue it on his application. He was asked if he had an agreement with Cole and Moore, as to the payment for the insurance. The court sustained objection, perhaps on the theory that in a prior question as to payment of bills incurred on the job, it appeared there was a written contract between the parties. When the latter question was asked, avowal was made to the effect that there was a definite understanding between the partnership and witness that the partnership was to pay for the insurance. The witness does not state that there was in reality a written contract, but as far as the record shows, the "written contract" was assumed by appellant's counsel. However, this situation is not of materiality.

Mr. Moore, testifying for the partnership, first told of his firm contracting for the project, and his subletting to Hester. He does say there was a written contract, but for some reason it was neither asked for nor produced. He says he knew that when he contracted with Hester, the latter would be required to carry liability insurance, so as to comply with the contract between his firm and the city. He states (speaking of the written contract with Hester) that Hester "assumed all obligations we had under our contract with the city, and following that it became necessary for Hester to obtain compensation liability insurance. I notified Hester of that. I presume he immediately made arrangements to get the insurance, possibly a few days after I notified him * * * he told me one day he had made arrangements for the insurance. At Mr. Hester's request I told Mr. Jones we would take care of the initial premium." He states that his conversation with Jones was "maybe two days" after his talk with Hester, and it was his understanding then that the policies had been issued. He said the government required his sub-contractor to have this insurance "as long as they stayed on the job."

There were several letters introduced, written by Jones to one member of the partnership, and another to the company, which, without close analysis, and some explanation, would in some measure tend to corroborate the statements of Moore, as to the agreement between him and Jones relative to the payment of the premium. However, in one of these letters (to appellee) Jones wrote that:

> "Mr. Moore, of Cole and Moore, told me when Hester applied for the policy, to write it, and if I was unable to collect from Mr. Hester they would take care of the premium, which they did, as far as the original premium was concerned."

This letter was in reference to an audit, which was desired by some of the parties. This audit when made, disclosed that the premium charged at the outset, should have been larger by a small sum, which Jones himself paid, but did not include in the total charge. Much of this letter, as did others, had to do with this situation, that is, the fact that his statements had not properly disclosed the complete nature, character and amount of the work Hester was to do under his sub-contract.

All these matters were before the jury, who by their verdict, though the evidence was sharply conflicting, accepted the version of the agent, under apparently correct instructions, one of which as we note, was offered by appellant, and given by the court, and which submitted to the jury appellant's theory of the law of the case as applied to the transaction.

However, counsel for appellant submits appellant's cause upon there "being no question that this agreement was not in writing, and therefore, unless the direction of Mr. Moore in July, 1937, that the premium be charged to Cole and Moore, instead of Hester, on his promise to pay if Hester did not pay, then Cole and Moore cannot be held for the additional premium, since there can be no question of the applicable law in this case, if the agreement of Moore was to answer for the debt or default of Hester, then not being in writing, it was not binding on Cole and Moore."

Therefore, it is contended, the court erred in refusing a peremptory. The question narrows down to whether or not the agreement comes within the purview of our Statute of Frauds, Kentucky Statutes, Section 470.

In the first place, looking to the pleadings, we find that the contractor and his sub-contractor were jointly sued on what was alleged to have been a joint agreement, that defendants (except the city) had agreed, but had failed to pay a portion of the premium due on final accounting. The answer by the partnership was merely a denial of any agreement to pay appellant the premiums on the issued policies

As we view the entire case, we conclude that from all the facts it is not one where there was lack of consideration to support the alleged agreement between the partnership and appellee, through its agent. One of the partners, at least, knew that in order to carry out his contract with the city, the original contractor was under duty to see that his and his sub-contractors' employees were properly protected in the way of indemnity insurance. The partnership knew when they sublet to Hester, he had to comply with all requirements of the contract with the City, and the superimposed red tape and technical requirements of the governmental agency. It is hinted, though not made clear, that Hester's ability to meet the requirements was doubtful, hence the hesitancy of Jones, and his efforts to "find where he stood."

The parties no doubt had in mind Section 4891 of our Compensation Act, which provides in part:

"A principal contractor, intermediate or sub-contractor shall be liable for compensation to any employee injured while in the employ of any one of his intermediate or sub-contractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate or sub-contractor who shall pay compensation under the foregoing provision may recover the amount paid from any subordinate contractor through whom he may have been rendered liable under this section."

We had occasion to construe this section in Burt v. Clay, 207 Ky. 278, 269 S. W. 322, and in Ruth Brothers v. Roberts et al., 270 Ky. 339, 109 S. W. (2d) 800, in which we held that under the section quoted, the principal contractor is made liable for injury sustained by an employee of a sub-contractor, to the same extent as the immediate or sub-contractor. Also that the doctrine of independent contractor no longer applies, in view of the statute, as between contractor and the employees of a

sub-contractor, provided the provisions of the statute as to presentation of claims be carried out.

Therefore, under the compensation law the chief contractor here, during all the time the project was being carried out, was liable for any injury which might have been suffered by any laborer or workman, directly employed by the sub-contractor. This being so, they benefited by the protection afforded through issuance of these policies, though issued in Hester's name, and while it is not material, the proof shows that several of Hester's employees were injured, and in each instance claims were submitted to, and paid by the appellant.

The section of the statute relied upon is not as "hide-bound" as we would conclude upon a reading. There are many exceptions noted to its various (7) subsections. In respect to the one here in question, (4) we have held that where the consideration of an agreement to stand good for the debt of another redounds to the benefit of the promisor, the statute does not apply. Hall v. Alford, 105 Ky. 664, 49 S. W. 444, 20 Ky. Law Rep. 1482; Simpson v. Carr & Parrigin, 76 S. W. 346, 25 Ky. Law Rep. 849.

In White v. Carter Dry Goods Company, 221 Ky. 845, 299 S. W. 1079, 1082, quoting from notes to Sherman v. Alberts, 126 Am. St. Rep. 494, we wrote:

"But in cases where the person to whom the goods were sold and delivered and the one who orally undertook to be bound for their price are sued together as joint original promisors, the action will not be defeated as to the latter by showing that credit for the goods was given partly to one and partly to the other defendant, as the statute of frauds does not extend to a joint promise by two persons for the benefit of one of them. * * * It has been held that, in an action for goods sold to a third person on the request of another, there can be no recovery against the promisor where the goods were not charged to him on the seller's books. Such was the ruling in Bussel v. Sagor, 27 Misc. 810, 57 N. Y. S. 221, thus making the fact as to whom the goods were charged the sole test as to whether the promise was original or collateral. But the better rule and the one supported by the decided weight of authority is, that the fact that goods sold and delivered to a third person at the request of another were charged to

such third person is to be considered in determining to whom the credit was given, but it is not conclusive"—citing a number of cases.

In the instant case it was shown that the premium in question was charged to the account of Hester, with the title of the partnership added. We do not intend to mean this to conclusively bind the promisor to pay, or to pay if Hester did not, but it is a circumstance to be considered. In Keyser v. Hopkins, 237 Ky. 105, 34 S. W. (2d) 968, 969, quoting from 27 C. J. 136, we wrote:

"An oral promise which, under the circumstances, is in effect a promise to pay a debt due from the promisor himself is not within the statute, although the incidental result of its performance may be the discharge of a debt of another."

Since the jury by its verdict found, as a matter of fact, that one member of the partnership promised to pay, and we have concluded, that the verbal agreement was not within the statute in question, we must affirm the judgment.