### First National Bank of Louisville v. Doherty, et al.

(Decided December 11, 1913).

### Appeal from Jefferson Circuit Court (Common Pleas Division No. 1).

1. Contracts—Who May Sue Thereon.—One for whose benefit a contract is made, may sue thereon, even if he be a stranger to the consideration.

2. Banks—Directors—Duties and Responsibilities.—The directors of a bank are trustees; and the law exercises a jealous scrutiny of their acts when their interests are adverse to the bank. They will not be permitted to obtain advantages which would have been impossible but for their connection with the bank as directors.

3. Bills and Notes.—A contract by which the parties thereto agree to be jointly bound to a certain bank on all notes endorsed by either of said parties, is not a contract of endorsement; but is enforcible as a primary liability.

HELM BRUCE and BRUCE & BULLITT for appellant.

O'DOHERTY & YONTS for appellee.

Opinion of the Court by Judge Hannah—Reversing.

In May, 1907, and for some time prior thereto, appellees, Charles J. Doherty and C. C. McClarty, and one George M. Boone (now deceased) were officers and directors of a corporation known as the Paracamph Company, said Doherty being president and said Boone being treasurer of said corporation. All the directors of said Paracamph Company were directors of appellant, the First National Bank of Louisville; and all the directors of said bank were directors of said Paracamph Company. Said McClarty was president of appellant bank and secretary of the Paracamph Company.

On May 2, 1907, appellant bank owned and held notes of said Paracamph Company aggregating over $60,000; there were a number of these notes, and they were payable on different dates, part of them bearing the endorsement of Doherty, McClarty and Boone, and part of them the endorsement of only Doherty and Boone.

On said date, there was drawn up and signed by them, a writing which reads as follows: (it was written upon letter-heads of the appellant bank):

"Louisville, Ky., May 2nd, 1907.

"We the undersigned, being officers and directors in the Paracamph Company, agree in consideration of loans already made and to be made by the First National Bank of Louisville to said Paracamph Company, to be jointly bound to said bank on all obligations of the above company endorsed by either one of us, to the extent of seventy thousand dollars. ($70,000.)

(Signed)    "Charles J. Doherty,
             "Clint C. McClarty,
             "Geo. M. Boone."

It is contended by appellant bank that this writing was executed and delivered to it as collateral security for the above stated indebtedness of said Paracamph Company. On the next day after this writing was executed, said Doherty, McClarty and Boone agreed among themselves that they would, from time to time, as the Paracamph Company notes fell due in appellant bank, execute new note to said bank to be signed by said Paracamph Company, but to bear the endorsement of only one of the three persons named, until each had endorsed one-third in amount thereof, which was done.

The Paracamph Company went into bankruptcy. Appellee Doherty paid the notes which he endorsed under the last-named agreement, but declined to pay those

upon which either Boone or McClarty was endorser; and Boone, having died and his estate being insolvent, appellant bank brought this action against appellees, Doherty and McClarty, upon the notes which said Boone and said McClarty had endorsed, under the above stated agreement made after said writing was executed.

Their defense was that the writing of May 2, 1907, was merely a private agreement between themselves, and one with which appellant bank had nothing to do; that it was neither executed nor delivered to appellant bank; that appellant bank never had any interest in said writing of May 2, 1907; that prior to the execution of that instrument Boone and appellee Doherty had been endorsers upon the notes of the Paracamph Company, but that there had been a verbal understanding between them and McClarty that all three of them were to be equally bound on those notes, and that the writing of May 2, 1907, was executed only for the purpose of putting that understanding into writing; that said writing was signed in triplicate, each party thereto taking one copy; that shortly after its execution, and under the subsequent agreement among themselves, as above mentioned, they carried out this understanding by endorsing the notes separately as same matured and were renewed, each of them endorsing one-third of said notes in amount, and thus separating their liabilities, after which the said writing of May 2, 1907, was no longer of any force or effect.

Upon a trial of the case, at the conclusion of the evidence for defendants, the court instructed the jury to find a verdict for defendants; and from the judgment dismissing the petition, this appeal is prosecuted.

There is nothing in the record to indicate the reason which actuated the lower court in dismissing the petition; and we have been unable to find any; more especially as to McClarty, who is endorser upon one-half of the notes sued on.

H. L. Rose testified for appellant bank that he was discount clerk of said bank at the time of the execution of the writing of May 2, 1907; that as such he had charge of the notes and collateral of said bank; that appellee, McClarty, then president of appellant bank, handed the said writing of May 2, 1907, to him, stating to him, on that date, that it was to be held by the bank as security for the Paracamph Company's loans; and that he, the witness, then placed it with the collaterals of said appellant bank, where it remained until called for by the Na-

tional Bank examiners. Mr. McClarty does not explain that testimony. He testified that "I put it (the writing) in a little side drawer in my desk. What became of it I am uncertain; I may have given it to Mr. Rose to keep for me. I am not clear on that point. I cannot recollect; to save my life, I cannot do it." He was then asked: "Was that paper ever at any time held by you for the bank or delivered by you to the bank for anybody?" and he answered, "No, sir." Two of the National Bank examiners, Mr. Yerkes and Mr. Johnson testified that they made an examination of the appellant bank in July and August, 1907, shortly after the execution of the writing in question; and that when they were criticising these loans to the Paracamph Company, this writing was exhibited to them by President McClarty as part of the bank's collaterals; and that Mr. McClarty stated to them that this writing was security for the Paracamph loans; and that if he and Boone were not good, the other (Doherty) was.

It was also shown by appellant bank that on September 1, 1908, a meeting was held of the board of directors of said appellant bank, at which meeting both Boone and McClarty were present; and that at that meeting, this writing was brought before said board and they ordered that it be spread upon the minute book of the directors' meetings, which was done. Mr. James Clark, who was secretary of that meeting of the board of directors, testified that when the order was made to spread the writing of May 2, 1907, on the minute book, neither Mr. McClarty nor Mr. Boone made objection or any claim that it was merely a private paper, or that it had performed its purpose, or ceased to exist. McClarty neither denies nor attempts to explain this testimony.

It is insisted by appellees that there was no consideration for the writing mentioned, and that appellees, therefore, are not bound by it. They contend that it is clear that the Bank did not thereby become bound to make any new loans to the Paracamph Company, nor to renew those already made. But, if this writing was executed to, or for the benefit of the bank, and the bank did in fact grant the renewal of those notes, or make new ones, on the faith thereof, there was sufficient consideration to support the agreement.

It is also contended by appellees that the writing of May 2, 1907, could only be construed as an attempt to make the signers thereof liable as endorsers; that is, to be jointly bound *as endorsers,* with the endorser upon

all obligations endorsed by either of them; and that they were released from liability because no notice was given them of the nonpayment of the notes at maturity. There is more ingenuity than logic in this contention. To bind oneself as endorser, one must endorse upon the instrument or upon a paper thereto attached. Sub-section 31, Negotiable Instruments Act, Kentucky Statutes 3720b. Moreover, there are no words of limitation upon the agreement to be "jointly bound" in said writing of May 2, 1907. As was said by this court in Berry v. Frisbie, 129 Ky., 343, "Where a written contract can from the context be construed so as to be binding upon the parties to it, instead of not binding, the former construction is preferred; as it is not to be deemed that the parties have been to so much care to do nothing. The deliberation of entering into a written engagement of itself implies a purpose to become bound by the making of an enforceable agreement, unless the very terms of the paper repel the idea." To give the writing in question the construction contended for by appellees would be to destroy it; and this will not be done.

But, it is contended by appellees that the writing of May 2, 1907, was never accepted, or adopted by appellant bank and that it was no party to the consideration therefor, and for that reason, it cannot sue thereon. The testimony for appellant bank showed that the writing was, by the president of said bank, delivered to the discount clerk, and placed in the collateral files of said bank; that it was presented to and considered by the National Bank examiners in July and August, 1907; that it was thereafter spread upon the minute book of the board of directors; and we think these quite sufficient to refute the claim that appellant bank was an alien to the writing in question. If the contract was made for the benefit of the bank, it could sue thereon even if it was a stranger to the consideration. In Blakely v. Adams, 113 Ky., 392, a deed had been made to a married woman, in which a lien was reserved in favor of a third person, who was not a party to the deed. It is not even shown that the person in whose favor this lien was reserved knew anything about the purpose to reserve the lien in his favor at the time of the execution of the deed. He seems to have been a creditor of grantees and they wanted his debt secured by their deed. In its opinion this court said:

"It is earnestly insisted that as appellee, John C. Adams, was a stranger to the conveyance from Hazelip to the appellant, Hettie S. Blakely, he cannot maintain an action to enforce the lien reserved therein in his favor, and especially as the grantee, Hettie S. Blakely, was a married woman. The authorities are very conflicting upon the question as to whether a third person can sue on a contract made for his benefit between others, to the consideration of which he is a stranger. The general rule in England and some of the American States —especially in Massachusetts, Michigan, New Hampshire and Vermont—is that a promise made by one person to another, for the benefit of a third person, who is a stranger, will not support an action by the latter. But the generally recognized doctrine in American courts is that a third party, for whose benefit a contract was made between others, may maintain an action on the contract against the promisor (citing authorities). *And in no State has this doctrine been carried farther than in Kentucky.* In Paducah Lumber Company v. Paducah Water Supply Company, 89 Ky., 340, it was held that where a water company contracted with a city to furnish a supply of water sufficient for the protection of the property of the inhabitants of the city against fire, an inhabitant of the city who had suffered loss by fire by reason of the water company's breach of contract with the city, might maintain an action against the water company in his own name, although he was not a party to the contract. And the same principle was recognized in Smith v. Lewis, 42 Ky., 229, in which Lewis executed a writing acknowledging that he had received of Smith certain sugar and coffee which he promised to deliver to Woolridge & Sweeney. It was held that Smith could not maintain an action of covenant on the face of this writing, for a failure to deliver the articles as stipulated; that the party legally entitled to the interest involved should sue for the breach. And this doctrine was followed in Allen v. Thomas, 60 Ky., 198, and Mize v. Barnes, 78 Ky., 506, in which it was held that if, by an arrangement between the vendor and vendee, the latter executed his note for purchase to a third person, a lien could be retained in the deed in favor of such person."

It follows, therefore, that even if appellant bank was a stranger to the consideration, it could sue on the writing in question.

It must be remembered that the appellees were directors of the Paracamph Company and of appellant bank. Their interests in this transaction were adverse to the bank. As is said in Morse on Banks and Banking, section 125, ''The high degree of confidence and responsibility resting upon directors of a corporation has often led the courts to regard them as trustees, and to declare the relationship existing between them and the stockholders to be that of trustees and *cestuis que trustent*. If this can be asserted with regard to the generality of corporations, it is peculiarly and exceptionally true with regard to banking corporations.    *    *    * The law is, and ought to be, very jealous in exacting the strict and thorough performance of these duties, and it is in the scrutiny of possible breaches of them that the rigid rules which govern trustees have been applied.''

In this case, if the contention of appellees should be upheld, we would have a case where they, being endorsers upon over $60,000 of the notes of the corporation, which notes were owned and held by a bank of which they were directors, would obtain their release from approximately two-thirds of that liability by procuring the renewal of notes evidencing their original liability, without their endorsement thereon. There can be no doubt in the mind of any reasonable man that such release from liability could not have been effected except by reason of their connection as directors with said bank; nor could they, even by reason of their being directors, have obtained the renewals to be continued without their endorsements as originally made, had it not been for the execution and delivery to appellant bank of the writing of May 2, 1907.

Moreover, the writing itself contradicts the contention of appellees. It states that they ''agree in consideration of loans already made and to be made by the First National Bank of Louisville to said Paracamph Company, to be jointly bound *to said bank,* on all obligations of the above company endorsed by either of us, to the extent of $70,000.'' It is in fact susceptible of but one construction and that is the manifest and literal meaning of the language used.

We are therefore of the opinion that the writing of May 2, 1907, was executed for the benefit of appellant bank; that there was sufficient consideration to support the agreement; and we therefore conclude that the lower court erred in instructing the jury to find for defend-

ants, and in not sustaining plaintiff's motion to instruct the jury peremptorily to find a verdict for it against both defendants on the notes sued on.

The judgment is reversed for proceedings consistent with this opinion, the whole court sitting.