## Federal Union Insurance Company v. Griffin.

(Decided December 18, 1931.)

FRANK M. DRAKE and WM. F. McMURRY, JR., for appellant.

F. E. GRAVES and EDGAR T. WASHBURN for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

The Federal Union Insurance Company issued to W. R. Griffin, on April 22, 1929, policies insuring his house and contents in the sum of $1,200. The premium on the policies was $6.88, which by a custom between Griffin and the local agent was charged to him on the agent's books when the policies were issued and he had thirty days to pay it. Griffin did not pay the premium; the house burned on June 18, and Griffin brought this suit to recover for the loss. The company denied liability, and pleaded in substance that the policy had been canceled and that Griffin had been so notified. This was denied by Griffin. The case was submitted to a jury, who found for Griffin. The insurance company appeals.

The testimony of the agent was that he went to see Griffin on June 11. He thus states what took place between them:

"I asked him for the premiums on the policies inasmuch as the policies were to be collected for

thirty days after written, and he said he had been out of work and could not pay for the policies, and I said, 'I will have to cancel them' and I asked him for the policies and he went and looked in his belongings for about five minutes and returned and said he was sorry he could not find the policies, and I said if he would call at the office the next day and sign a lost policy receipt, that would cancel the policies and he agreed to do that.

"A lost policy receipt is for people who absolutely refuse to pay for the policy or who lose the policy and they sign this lost policy receipt and that means they give up the insurance."

On the other hand, Griffin states this as to what took place:

"He just told me he was young Mr. Jennings and said he came down there to collect the premiums on the policies for my fire insurance."

"I told him that I had not been at work and that I did not have the money, but that I had a job promised me in Cairo the next Tuesday, and that I was going over there and if I got that job I would send him the money for this insurance on Friday or Saturday or Monday, and he told me—he said, 'We have had to send this money in for you' and I said to him, 'You shall not lose anything, I will pay you.' He turned around and walked off and said, 'That would be all right.'

"Q. Did he notify you at this time that the policies were going to be cancelled? A. No., sir, positively he did not.

"Q. The whole conversation was about collecting the premiums? A. Yes, sir."

The agent is confirmed in his testimony in some respects by three witnesses who went with him to the premises after the fire and testified as to statements then made by Griffin. On the other hand, Griffin is confirmed in his statement as to what occurred by his son and his son's wife, who testify they heard the conversation between him and the agent.

On this testimony the court by instruction 1 told the jury in substance that they should find for the plaintiff, unless they believed from the evidence that the

defendant prior to the fire verbally notified plaintiff that the policies were canceled, and in that event they should find for the defendant. Instruction 2 was in these words:

> "If you shall believe from the evidence that at the time of the conversation, mentioned in the evidence, between the defendant's agent Chas. Jennings and the plaintiff, the defendant, through its agent, extended a further credit to the plaintiff for the payment of the premiums on the policies sued on herein, then the law is for the plaintiff and you will so find."

The finding of the jury for the plaintiff under this instruction was a finding that the jury believed Griffin and his witnesses as to what occurred between Griffin and the agent on June 11. The instruction was proper; for, if the agent gave Griffin further time to pay the premium, as this testimony showed, the company could not maintain that the policies were then canceled when nothing was said about this at the time. The instructions of the court fairly submitted to the jury the question of fact in the case, and this court will not disturb the verdict where the jury credited one set of witnesses rather than another. The credibility of the witnesses was for the jury.

Judgment affirmed.