## Patton et ux. v. Blevins et al.

(Decided Nov. 15, 1935.)

DUNCAN & DUNCAN and ROSCOE R. DALTON for appellants.

E. BERTRAM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Joel Keeton died intestate a resident of Wayne county. He left surviving him his widow and a great number of lineal heirs, some of whom were in the descending line to perhaps the third or fourth generations; their parents (who were his descendants) having also died intestate. One of his heirs was the appellant and plaintiff below Jesse Patton. Joel Keeton owned at the time of his death a tract of land in Wayne county containing 50 acres which was patented to him in 1846. Plaintiff acquired the interest therein of some of the other heirs which, together with his inherited portion, made him the owner of a two-fifths undivided interest in and to the entire tract, with the other one-fifth belonging to the other heirs whose interests he had not acquired, some of whom had only a 1/192 part. The two appellees J. C. (Fox) Blevins and Dump Taylor (who were also defendants below) owned no interest in the land, being strangers to its title; but Blevins did own an adjoining tract known as the John Hurt entry, and which was patented in 1834, twelve years before the Joel Keeton patent was taken out. Adjoining the John Hurt patent was one acquired by Jacob Bertram for 150 acres and which was surveyed in 1815, and the patent was issued therefor either that year or the next.

This action was filed by appellants and plaintiffs below, Jesse Patton and wife, against all of the heirs of Joel Keeton, who jointly owned the other one-fifth in-

terest in the 50-acre tract of which the latter died the owner, and the appellees Blevins and Taylor were also made defendants. Plaintiffs sought, as between themselves and the joint owners of the other one-fifth interest in and to the tract, a sale of it for purposes of division, and they alleged as against the defendants Blevins and Taylor that they had trespassed upon a portion of the tract and cut, destroyed, and converted a quantity of timber growing thereon to the damage of the joint owners of the whole tract in the sum of $500, and judgment was sought against them for that amount. Defense was made by the two alleged trespassing defendants only, who denied in their answers that plaintiffs owned any part of the land from which the involved timber was taken. On the contrary, they averred that the land where the timber grew was a part of the John Hurt patent of 1834, and which, as above pointed out, had been acquired by the defendant Blevins. Following pleadings made the issues and the ordinary part of the action against Blevins and Taylor was submitted to the court for trial, a jury being waived. In its judgment it found from the evidence that the involved timber was cut from the John Hurt 50-acre patent of 1834, now owned by Blevins, and dismissed the petition in so far as it sought damages for the alleged trespass. To reverse that judgment plaintiffs prosecute this appeal.

As was proper, in the trial of an ordinary issue of fact, the court made a separate finding of law and facts, the latter of which was: "1. That the beginning corner a post oak, of Jacob Bertram 150 acres patent surveyed in the year 1815 is located about four poles above the spring among rocks. 2. From this beginning corner the remaining corners of the Jacob Bertram survey can be located by running the courses and distances given in the patent; that in this way the beginning corner of Menzes 150 acres patent dated 1815 can be and is located correctly at the fourth corner of said Bertram survey, from which corner all other lines and corners of said Menzes survey can be correctly located. 3. By taking the second corner of the Menzes survey as thus located which is also a corner to the John Hurt 50-acre patent dated in 1834 and running the calls of the said Hurt patent as called for in the patent will correctly locate the John Hurt 50-acre patent. 4. That the Joel Keeton patent for 50 acres dated in 1846 and under which plaintiffs claim is a junior patent to each

of the three patents above named. 5. That the timber claimed to have been cut by defendants Fox Blevins and Dump Taylor was cut inside the boundary lines of the John Hurt 50-acre patent above referred to, and that Fox Blevins, one of the defendants, was and is now the owner of said John Hurt 50-acre patent.'' The court then found the law to be, under well-settled principle applicable to such facts, that the Joel Keeton patent, to the extent that it lapped over on the John Hurt patent, was void because junior thereto.

From the inserted finding of facts by the court a glimpse of the intricacies of the issues, and the difficult paths to be traveled in order for the court to determine the essential and decisive facts involved in the case (and which was the correct location of the two conflicting patents, i. e., those to John Hurt and Joel Keeton), may be obtained. In order to solve those issues it became necessary to locate the Bertram patent, and also another one known in the record as the Menzes 150-acre patent, the corners and lines of which have some bearing upon the correct location of the first two mentioned ones, i. e., the Hurt and Keeton patents. In order to properly locate the Bertram patent, upon one corner or call of which a call or corner of one or both of the Hurt and Keeton patents touched, the surveyors had to begin at the only known corner of the Bertram patent and reverse calls, which is permissible by adopted rules for correct surveying, in order to locate its particular call having a determinative bearing upon the correct location of the first two patents mentioned. Each side produced its surveyors with their respective maps, and whose testimony tended to sustain the issues in favor of the litigant who introduced them. Likewise, each side introduced a number of nonprofessional witnesses, who claimed to be more or less familiar with the location of corners and lines of all four of the before-mentioned patents, and who testified to facts and circumstances supporting the contention of the litigant who introduced them; but both professional and nonprofessional witnesses in giving their testimony did so from the particular map (many times without designating which one) that was then before them and also before the court trying the case and about which they were then being interrogated. With practically entire unanimity, if not completely so, counsel would inquire, and witness would answer, about a particular corner or

line of the patent then being investigated, without designating on the map or in the question or answer as to which line or corner the question or answer was directed, and which was made no more definite than what is embraced in the word "here," "over there," "down this line," "up to this point," and running out to "that point," and by the use of other vague, uncertain, and indefinite expressions, none of which convey any distinct idea in print, and which is the only way they appear in this record, although such testimony may have been made plain and distinct to the court who was present and could see for itself the particular subject-matter of inquiry to which the attorneys and the witnesses referred. Such indefiniteness and vagueness is so pronounced as to call for its recognition by counsel for both sides in their briefs, and because of which counsel for appellants are moved to say, "At the outset we wish to apologize to the court for the condition of the record in this case," and which is followed by referring to the conditions herein before described. Counsel for appellees in commenting on the same condition says, "This record is all but unintelligible," and with which we are inclined to agree. If attorneys are content with bringing to this court records of such indefiniteness and obscurity in relation to the decisive issues in the case, they cannot expect it to penetrate the invisible opaqueness thus produced and discover alleged errors authorizing the court to correct the judgment against their clients based upon what they claim to be the true facts, but which are withheld from this court in the manner indicated.

A judgment in an ordinary action tried by the court without the intervention of a jury is to be treated on appeal as the verdict of a properly instructed jury, and the finding of the fact by the court (in lieu of the jury) will not be disturbed unless it is flagrantly against the evidence. That rule of practice has been declared so many times by us as not to require the listing of any of the opinions in which it was done. Notwithstanding that well-settled rule, counsel for appellants strenuously insist that we should apply in this case the rule governing this court's action in reviewing findings of fact by a chancellor in an equity case, and which is that such findings will be reversed if they are against the preponderance of the evidence as viewed by this court, and a judgment will be directed according to the facts

as found by this court from the entire record, and which is somewhat analogous to a de novo trial of the facts in this court.

However, no disturbance of such judgments will be ordered when there is no more than a doubt entertained as to what should be determined as the facts from the entire testimony. This case, as we have seen, belongs to the first one mentioned, i. e., that we are not authorized to disturb the court's finding of the material facts, unless it is shown to have been flagrantly against the evidence. In groping around through the record in as thorough and painstaking manner as we are capable, we discovered enough scattering items of comprehended testimony (like the blind hog that finds an acorn now and then) to justify the court's finding, and which was not sufficiently overcome, as we conclude, by similarly comprehended proof adduced by plaintiff. There is no other issue, either of fact or law, in the case than the one to which we have referred, and being convinced that the finding of facts by the trial court was sufficiently supported by the testimony that we have been able to glean from the record from the dim lights that it furnishes to us, we conclude, under the rule supra, that we are not authorized to disturb the judgment.

Wherefore, it is affirmed.