## Clow Gas Steam Heating Co. v. Crowell.

(Decided Nov. 22, 1935.)

WOODS, STEWART & NICKELL for appellant.

JOHN T. DEDERICH for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On April 28, 1930, appellee filed his petition in equity against L. J. Sindell, the Modern Heating Corporation, and Clow Gas Steam Heating Company, alleging that he had theretofore secured a judgment against Sindell in the sum of $1,173.80, and execution issued on his judgment had been returned "no property found." He alleged that Sindell was the owner of forty-six radiators located in the Pollard Baptist Church in Ashland, which were his by purchase from the Modern Steam Heating Corporation, and that Sindell had fraudulently conveyed the radiators to his codefendant Clow Gas Steam Heating Company; the purpose being to defeat the collection of the debt.

In this petition he sought and obtained a general attachment against any property of Sindell's which might be found, which process was executed by attaching the aforesaid forty-six radiators.

The appellant, Clow Gas Steam Heating Company, answered denying the allegations of the petition, and affirmatively asserted that it owned the forty-six attached radiators, and that Sindell had no interest therein. By an amended petition appellee alleged that the Gas Heating Company had, in a written agreement, taken over *all* the assets of Sindell, including the radiators, and had assured the payment of all indebtedness owing by Sindell "growing out of or in any way connected with selling or installing of radiators."

The Gas Heating Company answered the amended

petition, denying the allegations thereof, ana said in substance that the transfer of the forty-six radiators from Sindell to it was on January 13, 1928, at a time when a suit was pending against the church to recover the price of the radiators, which suit was settled on the agreement that the Gas Heating Company take back the radiators. However, on March 5, 1932, appellee Fred Crowell came in with another amended petition withdrawing the allegation, charging that the assignment from Sindell to the Gas Heating Company was fraudulent, and alleged that the transfer by Sindell was made for the purpose of having the Gas Heating Company assume, and by the contract it did assume, the liabilities of Sindell, which were theretofore incurred by Sindell as "gas steam heating liabilities," in accordance with paragraph 7 of an agreement between Sindell and the Gas Heating Company.

Still later, in order to make his petition conformable to facts, Crowell withdrew his allegations that the company took over *all* the assets of the heating company, and asserted that the Gas Heating Company took over such assets of Sindell as pertained to the "gas steam heating business," and that by the "take-over agreement" the Gas Heating Company assumed all the *gas steam business liabilities,* apart from any other liability of Sindell to J. B. Clow & Sons, and that the debt of Crowell against Sindell was a liability of the gas heating business turned over by Sindell to the company.

It seems that from some time in 1924 up to August 1, 1926, Sindell was salesman and distributor for the Modern Heating Corporation in Louisville, engaged in the sale and distribution of Clow Gas Steam radiators for Kentucky, and portions of West Virginia. On August 1, 1926, a certain portion of the Kentucky and West Virginia district was taken over by Sindell, who became manager and distributor for that territory. Crowell was a salesman and local manager for Sindell at the time the latter was acting as salesman and distributor for the Modern Heating Corporation, and it was during such time that he made sales, as he claimed, upon which his unpaid commissions totaled the amount of the judgment rendered in his favor against Sindell, which judgment forms the basis of this action.

It seems from the proof that Sindell, after August 1, 1926, was doing business for the Gas Steam Heating

Company, not on a commission basis, but that he bought the apparatus from the Gas Heating Company outright, and it was through this method of dealing he became indebted to the company. So, about May 1, 1928, the assistant manager and a director of J. B. Clow & Sons, and a director of the Gas Steam Heating Company came to Huntington, where Sindell was conducting his business, and took an inventory of Sindell's thereof, showing a book deficit of $7,873.91. The books contained the Baptist Church account, but did not show as a liability the claim of Crowell.

It appears from the record that the Gas Steam Heating Company paid all such liabilities of Sindell as were listed in his inventory of May 1. The debt due to Crowell was not listed, hence not paid.

As to the debt due and owing by the Pollard Baptist Church, which seems to have been one originally due the Modern Heating Corporation, it appears that after the assignment of the debt, suit was begun to enforce payment, and was ended by an agreement that the church would surrender the forty-six radiators, and plan had been made by the company to send them to some point in Ohio, which plan was circumvented by the attachment proceedings instituted by Crowell.

On a submission of the case on pleadings and proof, the chancellor held that paragraph 7 of the "take-over" agreement was sufficiently clear to indicate that it included (in the take-over) all "gas-steam business liabilities," and that Crowell's claim was such a liability and was assumed, or should have been, by the assignee under clause 7, and on the principle that one for whose benefit a contract is made may maintain an action thereon, although a stranger to the consideration, and the further principle that a contract made should be for the benefit of a party who has a direct financial interest in its performance, he held for Crowell in the full sum sought, sustained the attachment, and directed the sale of the radiators; the proceeds to be applied towards satisfying Crowell's debt.

The facts show that up to August 1, 1926, the territory afterwards assigned to Sindell was covered by the Modern Heating Corporation, headquarters at Louisville; that at that time Sindell became an independent dealer, buying radiators from J. B. Clow & Co.; and that he was operating under an assumed business name

as the Modern Heating Company. In 1927 the J. B. Clow Company formed a subsidiary known as the Clow Gas Steam Heating Company and established various branches throughout the United States, and in concentrating their business and undertaking to wind up the old Clow Company accounts they had audits and inventories of this agency or branch business, and in 1928 sent one of their representatives to Huntington to wind up the business of the Clow Company theretofore conducted by Sindell. An inventory was taken as above stated, and the Gas Steam Company then entered into a written contract taking over the gas steam heating business of Sindell, and assuming his obligations. So much of the take-over agreement as appears to have a bearing on the question at issue is as follows:

> "The following are the terms under which we will take over the business *you* have been conducting as a distributor of Clow gassteam radiators in Huntington and surrounding territory."

The company then agreed to take over certain named physical assets at prices named, also accounts receivable. Sindell was to be credited with freight paid on gas steam radiator inventory in Sindell's territory, also prepaid items such as rent, taxes, and insurance. Notes and accounts, not from trade, due to Sindell, he was to retain. Section 7 is the one about which the controversy here revolves, and is as follows:

> "7. Such gassteam business liabilities as *you* may have apart from your liability to James B. Clow & Son, we will assume, charging to you."

On the trial of the case the lower court in a written opinion held that Crowell was at the time a creditor of Sindell; his claim was in suit; it was undoubtedly a gas steam business liability, and clearly fell within the class of liabilities assumed under that provision. The court said:

> "It is my opinion that Crowell is one of the class for whom the contract was made."

The court then said:

> "The principle prevails in this state that one for whose benefit a contract is made may maintain an action thereon, although a stranger to the consideration, and it is further the rule that a contract is made for the benefit of a party who has a direct

financial, legal or equitable interest in its performance. Hall v. Alford, 105 Ky. 664, 49 S. W. 444, 20 Ky. Law Rep. 1482; Louisville & N. R. R. Co. v. Schmidt, 112 Ky. 717, 66 S. W. 629, 23 Ky. Law Rep. 2097; Blakeley v. Adams, 113 Ky. 392, 68 S. W. 393, 24 Ky. Law Rep. 263; First Nat. Bank v. Doherty, 156 Ky. 386, 161 S. W. 211; Louisville Gas & Electric Co. v. City of Louisville, 191 Ky. 797, 231 S. W. 909; Chesapeae & O. R. Co. v. Wadsworth, 234 Ky. 645, 29 S. W. (2d) 650.''

The court below pointed out that the agreement here was not dissimilar from that in Rosa v. Nava, 235 Ky. 574, 31 S. W. (2d) 910, and quotes from that opinion applicable excerpts.

Counsel for appellant urge a reversal, and insists that appellant company never agreed to assume or take over Crowell's claim, and insist that the take-over agreement was based on the inventory and agreement and that both must be considered as the contract; that when the inventory was prepared and the contract signed, Crowell only held an unliquidated claim against Sindell; that the books of Sindell did not contain evidence of Crowell's liability, thereby indicating it was not a gas steam business liability; and mainly that there is no evidence justifying the court's conclusion that appellant intended to pay the Crowell debt, he being a stranger to the contract.

Argument is advanced by appellant on the various points as tending to show that it was never in contemplation that the Gas Steam Company intended to or took over the Crowell liability. The grounds advanced seem to be based on facts about which there is no dispute. That the Crowell debt did not appear on the books of Sindell or on the inventory as one of his liabilities; thus it was not included in the note which Sindell executed to appellant as the difference between the total assets and liabilities.

The main questions are: (a) Whether or not appellant knew of the existence of the obligation; and (b) if so, was clause 7 of the contract broad enough to include the omitted obligation?

The finding of the court below on the disputed question of fact was to the effect that appellant knew of the obligation at the time of the take-over agreement

and prior thereto. Of course, there can be no question as to whether or not Sindell knew of the debt. We quote from the opinion, which is by order made a part of the record:

"The fact that, as contended by defendants, Crowell's claim is not mentioned in the inventory prepared by Mr. Little, cannot militate against Crowell's right to recover. The testimony of Sindell is to the effect, and he states so in so many words, that when Mr. Little was going over the inventory in 1928, he told him about Crowell's claim. Mr. Little was the representative of the Clow Gas Steam Heating Company, making the inventory. He does not deny this testimony of Sindell. He admits that Sindell discussed Crowell's claim with him, but does not recall whether it was at that time or afterwards. It is also shown by the testimony of Crowell and his attorney that a letter was received from James B. Clow & Sons advising Crowell that the matter of his claim was one purely between himself and Sindell. James B. Clow & Sons is the parent corporation; its officers are officers of defendant Clow Gas Steam Heating Company."

It may be added that the take-over agreement was not between the Gas Steam Heating Company and the Modern Heating Company, but between the Gas Steam Heating Company and Sindell. It so shows.

While the court below did not enlarge on the conclusion that section 7 of the agreement was full enough to cover the Crowell liability, there is sufficient in the record in the way of proof to lend weight to the lower court's conclusion. It is shown that some of the assets taken over by appellant were some of those assigned or turned over to him in the windup of the Modern Heating Corporation. The Baptist Church radiators, or the due account for them, thus became his. The company paid for automobile accessories or parts on Sindell's automobile. If the account of the Baptist Church was a part of the gas steam business, it occurs that a commission due on selling the radiators is likewise a gas steam liability; the obligation grew out of the "gas steam business." Section 7 does not limit the taking over the business assets and assuming the liabilities as confined to any particular time, nor confined

to the Modern Heating Company's business as distinguished from that of the Modern Heating Corporation.

The court below had determined a question of fact followed by the application of certain pertinent principles of law. The rule in this jurisdiction is that questions of fact determined by the chancellor will not be disturbed by this court if there appears evidence to uphold his conclusions. Even if there be doubt in the minds of this court, it must be resolved in favor of the lower court's findings. Here there was sufficient evidence to warrant his conclusions and he correctly applied the rules of law.

Judgment affirmed.