## Kentucky Home Life Ins. Co. v. Johnson.

(Decided April 24, 1936.)

L. H. HILTON and EATON & BOYD for appellant.

BEN S. ADAMS for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

On July 15, 1925, the Inter-Southern Insurance Company issued policy No. 133654 for $3,000 on the life of Robert B. Jones, his wife, Louisa Jones, now Louisa Johnson, being named as beneficiary. The stated annual premium was $133.93, the policy providing

that the company would on conditions accept payment of $35.50 as quarterly premium on the 15th day of July, October, January, and April.

In a petition filed by appellee in the McCracken circuit court on August 7, 1933, to which the Inter-Southern and appellant were made defendants, after alleging facts as above set out, it was stated that Robert Jones died intestate October 9, 1926, leaving his widow, beneficiary, and only heir at law. She alleged that there was due on the policy 84 monthly installments of $25, or a total of $2,025. It was also alleged that immediately after the death of the insured she furnished to the insurer the requisite proofs of death, and made demand for payment of the monthly installments, but that insurer denied liability and refused to pay anything, claiming that Jones' policy had lapsed on August 15, 1926, on account of nonpayment of premium.

It was then alleged that since the death of assured the Kentucky Home Life Insurance Company had by contract acquired all the property and rights of the Inter-Southern, and assumed and agreed to fully carry out the existing contracts with policyholders of the Inter-Southern, and to pay accrued death claims; that she had demanded of the appellant that it carry out the contract and pay the policy, but that appellant still contended that it was not liable for any part thereof. Appellee pleaded that all premiums on the policy had been paid, and that the policy was in full effect at the time of the death of insured. By amendments it was alleged that the company on June 15, 1926, had in its hands a sufficient sum belonging to insured to carry the policy for a period of thirty days or more, and it was specifically pleaded that the company, after the reinsurance agreement hereinafter referred to, had agreed to pay the death claims accrued prior to the reinsurance date.

The defendants answered, denying all the allegations of the petition, pleading affirmatively, in substance, that in pursuance to a suit instituted by the then insurance commissioner, an order had been entered in the Franklin circuit court appointing receivers to take over the Inter-Southern affairs, and that

later the court, by appropriate judgment, fully approved the reinsurance contract and directed that all suits and proceedings against the Inter-Southern or its receivers, should be prosecuted and conducted in the Franklin circuit court, and not elsewhere, without the consent of the court or the receivers. Copies of the reinsurance contract and such orders of the court as deemed pertinent were made parts of defendant's pleadings. By its pleadings the appellant contended that, due to the orders of the Franklin circuit court, it alone had jurisdiction of the subject-matter of the McCracken county suit, and likewise exclusive jurisdiction of the parties defendant. The contention is made that the plaintiff below, appellee here, had no standing in the McCracken court, since her cause, if any, did not arise under the policy, but by reason of the insurance agreement between the two defendants, because the latter "made no agreement with reference to the policy except as set out in said reinsurance agreement," and, therefore, the contract did not arise out of an agreement or transaction with any agent of "said company in McCracken county." Defendants specifically denied that the premium due on July 15, 1926, was paid in whole or in part, and that the policy lapsed by reason of nonpayment of premium; this lapsation claimed to have been as of August 15, 1926, which was after the expiration of the thirty days of grace allowed in the policy. It is alleged that "the Inter-Southern was under no agreement or obligation to pay said policy or any part thereof, and the Kentucky Home did not under said reinsurance agreement * * * undertake to pay said policy issued by the Inter-Southern which had lapsed for non-payment of premiums." Reading closely the pleadings of appellant, it is ascertainable that on the merits of the case the contention is that the Kentucky Home is not now liable because Inter-Southern was not liable since the policy had lapsed, hence there was no obligation to assume.

On June 20, 1934, and before trial, appellee dismissed without prejudice so much of her petition as pleaded liability of and sought relief from the Inter-Southern. By agreement of parties the cause was submitted to the court without the intervention of a jury,

with a request that the court make a separate finding of facts, and conclusions of law, the court complying.

As to facts, the court found (not setting out here admitted facts) that the attached coupon represented cash in the company's hands after July 15, 1926, of $14.07; that from the proof L. D. Massey, who sold and delivered the policy to Jones, was during 1925 and 1926 the general agent of the Inter-Southern in McCracken county and other western counties; that on August 12, 1926, Jones paid to "said insurance company by and through its agent $35.50, a quarterly premium, and which was paid within the grace period, and kept the policy in force and effect up to October 9, 1926, the date of the death of the insured." It was further found that the beneficiary had made demand for and had been refused payment of the insurance; that under the reinsurance contract the Kentucky Home had assumed the payment of accured death claims against the Inter-Southern, and that Jones' policy came within the class of claims which it agreed to pay; that plaintiff had demanded of appellant forms on which to make her claim by proper proof, which request was denied; that appellant at the time of the filing of the action, prior thereto and since, had maintained an office and had an agent at Paducah.

From the facts so found, the court, as a matter of law, determined that plaintiff had the right to maintain her action in the McCracken court, and was entitled to be paid $2,025, with interest. Appellant in pleading and brief sets out the reinsurance agreement between the receivers and the Kentucky Home Life of date August 6, 1932, which we note carried a provision signed by the court, enjoining practically everyone and everybody from proceeding against the receivers or Inter-Southern except in the Franklin circuit court without consent of that court.

Counsel refers to sections 71 and 72 of the Civil Code of Practice, and takes the position that in an action such as is involved here, the jurisdiction of parties (and subject-matter) lies only in the county where the insurance company has an office or a place of business, or has a chief officer or agent, or if it be upon a contract, in such above-mentioned counties, or the county in which the contract is made or is to be per-

formed, and they say that the plaintiff's case rests solely upon the contractual obligations of the Kentucky Home Life with the Inter-Southern, and since it was executed and to be performed in Franklin county, that court alone under the Code provisions, and by reason of the reinsurance agreement, had exclusive jurisdiction.

It may be well at this point to relate facts, giving pertinent dates. The policy was issued to Jones on July 15, 1925; he died October 9, 1926. His wife was named the sole beneficiary and she was the sole heir at law of deceased, so no one else was interested in the proceeds of the policy. The reinsurance agreement was entered into August 8, 1932, nearly six years after the death of insured. Since there was no claimed change of beneficiary, the entire proceeds of the policy vested in the widow of Jones at the instant of his death. Section 655, Ky. Stats. Thompson v. Latimer, 209 Ky. 491, 273 S. W. 65.

The beneficiary's right to the proceeds of the policy having accrued at the instant of his death, it follows that her right to proceed to its collection inured at the same time. She would have, perhaps, proceeded with her suit (since it appears that the Inter-Southern denied liability) long before the instant action was instituted, but for the facts and sayings of the company by its agent.

It is provided by section 9 of the reinsurance agreement, substantially, that the Kentucky Home Life would within 120 days after the effective date of the agreement pay all valid death claims of the Inter-Southern accrued and unpaid at the date of agreement, subject to all legal and equitable defenses thereto which were available to the Inter-Southern or the receivers. The right was reserved to defer payment during a period of 120 days from receipt of satisfactory proof of death.

In the same section of the contract it was provided that with regard to monthly disability contracts, or waiver of premium contracts, the same should be subject to outstanding liens, but with relation to death claims, it was written in section 8:

"Nothing in this clause, however, shall be con-

strued as relieving the company (Ky. Home Life) from liability for payment of death claims without deduction on account of lien.''

We take the portions of these two sections when construed together to mean that accrued death claims were not to be subject to the provisions of secs. 2, 3, and 4 of the reinsurance agreement, which placed against each policy a lien of 60 per cent. of the net equity, which clauses were discussed in Casteel v. Ky. Home Life Ins. Co., 258 Ky. 304, 79 S. W. (2d) 941; Kentucky Home Life Ins. Co. v. Miller, 262 Ky. 330, 331, 90 S. W. (2d) 59. In fact, an officer of the company agreed that the company was not claiming the lien set up by the sections supra, with reference to the claim of appellee here, though of course, insisting on such defenses as would have been available to the Inter-Southern.

When the insured died on October 9, 1926, the appellee had the undoubted right to institute the suit in McCracken county, because the contract was finally accepted there upon payment of the premium; the contract was to be there fulfilled, and the insurer had an agent in Paducah. We have held that one has a vested right in a cause of action, of which he cannot be divested by legislative act. Terrill v. Rankin, 2 Bush (65 Ky.) 453, 92 Am. Dec. 500; Hedger v. Rennaker, 3 Metc. (60 Ky.) 255; Yeatman v. Day, 79 Ky. 186. But we need not go as far as the principle established in the case mentioned, it being sufficient to say that the reinsurance contract relied upon did not, since she was not a party thereto, have any binding effect upon her and did not have the effect of depriving her of any rights which existed prior to, or at the time of making the contract of reinsurance. While the contract particularly reserved any and all defenses which might have been available to the original insurer, it did not specifically or otherwise alter other rights. The company took over the accrued death claims, with such defenses as were theretofore available subject to all other rights and privileges of claimants. As to the rights of the insured here to sue under the contract in question, see Johannes v. Phœnix Ins. Co., 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249, and cases cited in the U. S. Fire Ins. Co. v. Smith (Ala. Sup.) 164 So. 70.

The court found as a fact that Massey, general agent of the Inter-Southern in 1925 and 1926, collected the premiums, and delivered the policy in Paducah. The policy provides that it shall not be of force or effect until personally received by applicant and satisfactory settlement of the initial premium, hence the contract was made in McCracken county. Upon death of insured it was to be paid to the beneficiary.

The court found as a matter of fact that at the time of the filing of the action the Kentucky Home Life "maintained an agent and an office in Paducah, and that its local agent collects premiums and remits to the Kentucky Home Life, collecting for it on policies issued by the Inter-Southern," acquired by the defendant under the reinsurance contract. The court might have further found that the latter agent "solicited insurance, sold and wrote policies and adjusted claims." These facts as found by the court are sustained by the evidence, and on these facts the court below correctly determined that jurisdiction lay in the McCracken court. See Insurance Co. of North America v. Hopper, 253 Ky. 402, 69 S. W. (2d) 728; Barnes v. Union Central Life Ins. Co., 168 Ky. 253, 182 S. W. 169.

We come now to the contention of appellant that the Kentucky Home Life is not obligated, because the Inter-Southern was not bound, on the sole ground that the insured had defaulted in premium payments.

The policy was issued July 15, 1925, and at the time of its issuance Jones paid the annual premium as fixed in the policy, to wit, $133.93. The policy contained a provision to the effect that the company would accept $35.50 as quarterly payment of premium, "provided that such change is made on any anniversary of the date of the policy upon written notice thereof received."

Jones' first premium payment carried his policy in full force and effect to August 15, 1926, since the provided thirty-day grace period is not disputed. Jones died October 9, 1926. It is contended that the cash coupon attached to the policy representing the sum of $14.07 was payable to Jones on July 15, 1926. It was not paid on the date mentioned. It was provided that

the amount fixed in the coupon could be applied to premium payment on July 15, 1926, and had it been so applied the policy would have had effect until August 15, 1926, or if applied at the end of the thirty days of grace, it would have extended the policy to September 15, 1926. However, we need not speculate on the effect of the application or nonapplication of the cash value of the coupon, since the contention of appellee is, that on August 12, 1926, Jones paid the quarterly premium as fixed in the policy. The company says if it was paid it was without its knowledge or consent, and without written notice of a change of payment plan. If it was paid, being within the grace period, it extended the force of Jones' policy to October 15, 1926, or if grace later counted, to November 15th.

Appellee contends, and the court found it to be a fact, that the quarterly premium of $35.50 had been paid on August 12, 1926. After the death of Jones, his widow produced the policy and found with it two receipts signed by Massey. One was for the initial annual premium of $133.93, the other was written on what appears to be a leaf from a notebook and is as follows:

"Paducah, Ky., August 12, 1926. Received from Robert B. Jones, $35.50, quarterly premium on policy No. 133654.

"L. D. Massey."

Massey, being introduced as a witness for appellant, said he had sold Jones the policy in question, and that he had receipted for the initial annual premium, that he never collected any other premium from Jones. Admitting that he gave Jones the receipt of August 12 for $35.50, which was stated therein to be "quarterly premium on policy No. 133654," witness says it was given to "indicate a credit on the note taken for the balance of the first annual premium, when such credit aggregated an amount equal to a quarterly premium." He stated that he did not know whether there was a balance due on the note or not, but believed there was. Again he says that the first annual premium was settled by the insured, "who was then in the tailoring business, by credit for work done for me, and by promissory note for the balance of the premium." No note was produced. The ques-

tion of payment of this quarter-annual premium turns on Massey's statements on the one side and the receipt on the other. The court below found as a matter of fact that the payment was made to the company, his conclusion being that Massey (admittedly) at the time of its payment was general agent of the Inter-Southern. Since the court thus found the fact so to be, we have only to ascertain whether there was evidence to support the finding. In the first place the explanation of Massey as to the payment in the manner claimed by him is not convincing. If he had a note, the usual course would have been the indorsement of a credit thereon. The receipt signed by Massey is evidence of a payment by Jones of the sum named therein. The amount is exactly as is fixed in the policy as the quarter-annual premium. It was paid August 12, 1926, just three days before the expiration of the days of grace. Aside from this, there was undenied testimony which tended to show that the agent's reputation for veracity was not good. On the whole testimony, we are of the opinion that the court correctly found that are receipt introduced was a payment of the quarter-annual premium. But appellee contends that the proof shows that the Inter-Southern never received any premium or part of premium, save the initial annual premium, such argument being based on the ground that the terms of the contract, which are not of doubtful meaning, did not authorize Massey to accept the quarter-annual premium, unless the company had theretofore received written notice of a proposed change on any anniversary date of the policy. Reading the provision of the policy relating to the change of method of paying premiums, we note that the change of payment, if made without written notice, or at any time other than on the anniversary of a policy, does not work a forfeiture of the policy. The provision of change of payment while it might be of benefit as a matter of accomodation to the insured, is undoubtedly one for the benefit of the company, perhaps more as to bookkeeping or auditing than otherwise. The company would not be so much concerned as to when or how the premiums were paid, as it would be that the premiums were paid.

It was definitely shown that at the time of the execution of the receipt Massey was general agent of

the Inter-Southern for McCracken and several other counties, selling and writing policies, collecting premiums and settling claims. A general agent ordinarily stands in the stead of the company in conducting its business, within limitations. "The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law." The acts of an agent, we have uniformly held to bind the principal when the agent is acting within the scope of his authority. Henry Clay Fire Ins. Co. v. Grayson County State Bank, 239 Ky. 239, 39 S. W. (2d) 482, 483, and numerous citations therein. By the payment to Massey, and his acceptance of the premium, though it was quarterly premium, the provision as to the method of payment was waived. New York Underwriters' Ins. Co. v. Ray, 246 Ky. 105, 106, 54 S. W. (2d) 627. See, also, Federal Union Ins. Co. v. Griffin, 241 Ky. 771, 45 S. W. (2d) 8; Equitable Life Assurance Coc. v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206; Standard Accident Ins. Co. v. Patton, 202 Ky. 566, 260 S. W. 371.

In the last-named case the company had lapsed a policy for nonpayment of premium, contending, as here, that the agent had no authority to accept the payment so as to bind the company. The receipt given (after lapse) by the agent was strikingly like the one in question here. It read "August 26, 1921, received of Mrs. Patton, $2.36 on Wm. Patton's accident insurance. Balance due $1.39. Thomas G. Stokes." The company was held bound by the receipt of the agent. This case cites with approval Phœnix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254, Kentucky Live Stock Ins. Co. v. Stout, 175 Ky. 343, 194 S. W. 318, to which may now be added: Sun Life Assur. Co. v. Wiley, 258 Ky. 311, 79 S. W. (2d) 937; Nat. Life & Accident Ins. Co. v. Ransdell, 259 Ky. 559, 82 S. W. (2d) 820; Com. Life Ins. Co. v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457; Mass. Mut. Life Ins. Co. v. Sexton, 255 Ky. 309, 74 S. W. (2d) 206; Pelican Assur. Co. v. Schildknecht, 128 Ky. 351, 108 S. W. 312, 32 Ky. Law Rep. 1257; Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931.

Without further citation or discussion we have concluded that there was ample proof before the court below to warrant the findings of facts as announced by the court, and that his application of the law to the facts as found was correct. It is hardly necessary to refer to the well-established and universally known rule adhered to so long by this court, to the effect that the finding of facts by a court has the same legal effect as the verdict·of a properly instructed jury, and that where there is evidence sufficient to support the finding, this court will not disturb same, when it creates no more than a doubt in the mind of this court. Patton v. Blevins, 261 Ky. 307, 87 S. W. (2d) 623; Clow Gas Steam Heating ·Co. v. Crowell, 262 Ky. 136, 89 S. W. (2d) 627.

Entertaining the views expressed, we must uphold the judgment below.

Judgment affirmed.