## Casteel v. Kentucky Home Life Insurance Co.

(Decided Jan. 29, 1935.)

(As Modified on Denial of Rehearing March 22, 1935.)

E. BERTRAM for appellant.

DUNCAN & DUNCAN, BEN S. WASHER and L. H. HILTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On February 7, 1930, the Inter-Southern Life Insurance Company of Louisville, Ky., for a paid premium of $352.55 and a like sum to be paid each year thereafter during the life of the insured, issued to Abraham Casteel an insurance policy on the ordinary life plan for the principal sum of $5,000. The wife of the insured, appellant herein, was named beneficiary of the policy. The insured paid the annual premium

thereafter due February 7, 1931 and 1932, respectively, but failed to pay the premium February 7, 1933.

In April, 1932, the Inter-Southern became insolvent and was placed in the hands of a receiver. In August, 1932, an agreement was reached between the receiver, the State Insurance Commissioner, and the Kentucky Home Life Insurance Company of Louisville, whereby the Kentucky Home Life took over the business of the Inter-Southern and the latter ceased to do business, and the Kentucky Home Life assumed the policies, contracts, assets and liabilities, etc., of the Inter-Southern as provided in the contract with the State Insurance Commissioner and receivers for the Inter-Southern. This contract was approved by the Franklin circuit court. The insured died January 9, 1934, and soon thereafter the appellant brought this suit in the Wayne circuit court against the Kentucky Home Life to recover of it the face value of the policy. In the original petition she alleged that the Kentucky Home Life succeeded to the assets and liabilities of the Inter-Southern and had reinsured all of the policyholders of the Inter-Southern and assumed all its risks, and, therefore, was liable to her as beneficiary of the policy issued to her deceased husband and that the policy was in full force and effect at the time of his death. Thereafter she filed her amended petition alleging that she had been duly appointed and qualified as administratrix of the estate of her deceased husband, the insured, and asked that she be permitted to sue in both capacities—in her individual right as beneficiary of the policy, and also as administratrix of the estate of the decedent. The defendant below entered motion for the court to require her to elect as to whether she would prosecute her action in her individual right as beneficiary of the policy, or as administratrix of the estate of her decedent. Upon her failure to elect, the court made the election for her and struck from the pleadings her amended petition in so far as she sought to recover as the beneficiary of the policy. Thereafter appellant filed her second amended petition withdrawing her first amended petition in so far as she sought to recover as administratrix, and alleged therein that the net reserve value of the policy sued on was $363 at the time defendant took over the business and assets of the Inter-Southern, and that the defendant had received and then had said reserve due on the said policy. She further

alleged that the provisions of the contract entered into by the defendant Kentucky Home Life and the receiver of the Inter-Southern was not a contract of reinsurance as between her decedent and the defendant, but was a contract of assumed risk, and prayed as in her original petition. In her original petition she prayed to recover the sum of $5,000 (face of the policy) with interest from January 9, 1934 (date of the death of insured), etc.

A special demurrer had theretofore been filed and sustained to her original petition and petition as amended, and the special demurrer was extended to the second amended petition which the court also sustained, and she declined to plead further and her petition was dismissed. From that judgment she brings this appeal.

The various defenses pleaded by the Kentucky Home Life were that the adjudication of insolvency of the Inter-Southern, ipso facto, canceled the policy and precluded any claims of the insured for subsequent occurring losses under the policy; and further that if appellant had any cause of action she should prosecute it as administratrix of the estate of her decedent, and not in her individual capacity as the beneficiary of the policy; and that the policy sued on had lapsed for non-payment of premiums at the time of the contract between the Kentucky Home Life and the receivers for the Inter-Southern and State Insurance Commissioner, which was approved by the court, and at which time the insured was entitled to only the reserve provided in the policy; and, under the terms of its contract, the Kentucky Home Life assumed the policies and contracts of the Inter-Southern subject to the status of the insured with the Inter-Southern and subject to such defenses as would have been available to the Inter-Southern.

The generally recognized rule is that a decree of dissolution of an insurance company, as a decree pursuant to Kentucky Statutes, sec. 753, or an adjudication of insolvency coupled with the appointment of a receiver, cancels or terminates outstanding insurance policies by operation of law. Moren v. Ohio Valley Fire & Marine Ins. Company's Receiver, 224 Ky. 643, 6 S. W. (2d) 1091; Couch's Enc. of Insurance Law, vol. 6, sec.

1431, p. 5070. In New Farmers' & Traders' Bank v. Crowe, 82 S. W. 287, 288, 26 Ky. Law Rep. 500, the rule is thus stated:

> "Where an insurance company has become insolvent, the rule is that the holder of an unmatured policy is a creditor, and is entitled to share with the other creditors in the assets, the amount of his claim being the value of the policy at the date of the dissolution of the company; and where he is indebted to the company a set-off will be allowed him to the extent of his claim."

In the case of Jas. W. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423, among other points discussed and decided which are pertinent to the case at bar, it is held that the amount of the insured's recovery is limited to the reserve in the policy less any indebtedness thereon, and that the insolvency of the original insurer, ipso facto, terminates all contracts of insurance issued by it. To the same effect, see Fuller v. Wright, Insurance Commissioner, 147 Ga. 70, 92 S. E. 873, L. R. A. 1917E, 1139; Couch Enc. of Insurance Law, vol. 8, sec. 2043; Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669; Cooley's Briefs on Insurance, vol. 5, p. 4624; 32 C. J. pp. 1039, 1040; 40 R. C. L. sec. 20, p. 853.

But if the assets of an insolvent company are sold to another which undertakes to assume the contracts and obligations of the insolvent company (as was done in the present case), the rights of the policyholders in the insolvent company must be determined by the contract between the buying company, the receiver or other authorized representative of the insolvent company, and the policyholders.

The Kentucky Home Life mailed to each policyholder in the Inter-Southern, including Abraham Casteel, the insured, copies of its contract, wherein it was in part provided:

> "2. The company agrees, for the considerations hereinafter set forth, and subject to the exceptions, modifications and limitations herein stated, to, and does hereby, reinsure all the outstanding policies of insurance and annuity contracts and supplementary contracts and pension fund contracts issued and/or assumed by the Inter-Southern

which are in force, in accordance with the terms of said policies and contracts, on the day upon which this reinsurance agreement becomes effective, and, subject to the exceptions, modifications and limitations herein stated, agrees to, and does hereby, assume the liability thereunder, subject, however, to the same rights of defense as are available to the said Inter-Southern and/or said Receivers. The Company will reinstate, subject to the terms and conditions of the policies, such policies as may not be in force at the date of the signing of this agreement, provided there be established and placed against such policies the same lien as hereinafter provided.

"3. The Company specifically limits its liability to the benefits, agreements and conditions under the policies of insurance and annuity contracts and supplementary contracts and pension fund contracts issued by the Inter-Southern, including the assumed liability on the policies of all companies reinsured by said Inter-Southern, and the Company assumes no other liability of said Inter-Southern, and/or Receivers of any nature or kind whatsoever, except as otherwise herein expressly provided, all subject to the same rights of defense as are available to the said Inter-Southern and/or said Receivers.

"4. Whereas the assets of Inter-Southern hereby and to be hereafter conveyed to the Company are not sufficient at either their actual and/or agreed-on admitted value, as hereinafter stated, to provide for the discharge of the obligations hereby assumed, as part of the consideration there shall be established and placed against each policy reinsured and assumed hereunder by the Company, a lien equal to sixty per cent (60%) of the net equity as hereinafter defined, such lien to bear interest from June 30, 1932, at the rate of six per cent (6%) per annum, compounded annually. * * *

"All polices reinsured hereunder which are in force at the effective date of this agreement, or which may hereafter be in force, as paid-up insurance shall be subject to the aforesaid lien. When the amount of any policy indebtedness and/or lien, with interest thereon, on such paid-up insurance

equals or exceeds the reserve thereon, then such paid-up insurance shall cease and determine. * * *"

The Kentucky Home Life pleaded in its answer that the insured accepted the contract, and that the reduction of 60 per cent. of the reserve or the cash value of his policy reduced it to a sum sufficient only to extend his insurance to March 17, 1933, and the premium which became due February 7, 1933, not having been paid, the policy had lapsed before the death of the insured. In this position it is correct if the insured accepted the contract. If he did not accept the contract, in that event the Kentucky Home Life did not assume or undertake to carry his policy and the only duty it owes him is an accounting for such reserve as came to its hands by reason of having purchased the assets of the insolvent company, and in this event, as we have stated, the insured was entitled to such portion of the reserve in his policy as the whole amount of assets bears to amount of liabilities of the insolvent company as any ordinary creditor would share the assets of an insolvent. In view of the enormous indebtedness and liabilities of the Inter-Southern over and above its assets, it is apparent that its policyholders will not share the face value of the reserve in their respective policies. However, that may be determined at the proper time and we need not undertake to estimate this sum.

It is insisted for the appellant that the Kentucky Home Life having purchased the assets of the Inter-Southern, it became a trustee for all policyholders of the Inter-Southern, and therefore liable on all of the contracts of the Inter-Southern as though it had remained solvent and continued in operation. But we do not think this position can be maintained, for the very obvious reason that the Kentucky Home Life had a capital and surplus of only $1,000,000 and the Inter-Southern was insolvent to the extent of more than $7,000,000. If the Kentucky Home Life had undertaken to assume $7,000,000 indebtedness or liabilities of the Inter-Southern, with only $1,000,000 capital, it would ipso facto have become insolvent. Even though it be called a trust, such trust would extend only to the reserve or cash value of the insured's policy and not to the face value thereof.

In the circumstances the reserve or cash value of

the policy became an asset of the estate of the insured, for an accounting of which he may have had in his lifetime; but having failed to do so, it passed to his estate as other personal property, and the right of recovery is in the representative of his estate.

From what has been said, it follows that appellant had no right to maintain this action in her individual capacity as the beneficiary of the policy and the court did not err in so holding.

The judgment is affirmed.