BREAULT v. CENTRAL LIFE ASSURANCE SOCIETY.

1. Insurance—Construction of Policy.

An insurance policy must be read as a whole and a provision affecting a particular condition be applied to modify a provision covering the condition only partly.

2. Same—Reinsurance—Waiver of Lien—Impaired Reserves.

In reinsurance contract between receiver of original insurer and defendant reinsurer, clause providing that latter would either waive or reinsure policy lien necessitated because of impaired reserves of original insurer and not deduct amount of lien from claims accruing before given date, later than that of death of insured herein, *held*, applicable only to policies upon which no default in payment of premiums had occurred prior to, and were in effect at time of such death.

3. SAME—NONPAYMENT OF PREMIUMS—REINSURANCE LIEN—EX-
HAUSTION OF RESERVES—AUTOMATIC EXTENDED INSURANCE.

    Defendant reinsurer *held,* not liable under original policy and re-
insurance contract where insured had defaulted in payment of
last premium and terminal reserve had become exhausted by
70 per cent. lien created under reinsurance contract between
receiver of insurer and defendant, leaving insured without any
automatic extended insurance at time of death.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 24, 1936. (Docket No. 123, Calendar
No. 38,556.) Decided June 11, 1936.

Assumpsit by Mary Breault against Central Life
Assurance Society, an Iowa corporation, on a life
insurance policy for death benefit. Judgment for
defendant. Plaintiff appeals. Affirmed.

*Oxtoby, Robinson & Hull,* for plaintiff.

*Wayne Van Osdol, Kenneth D. McGregor, Fred P.
Carr, A. R. Shepherd* and *George F. Malcolm,* for de-
fendant.

EDWARD M. SHARPE, J. This is an action by Mary
Breault as the beneficiary under a life insurance
policy; defendant had judgment and plaintiff ap-
peals.

The facts are not in dispute and are as follows:
On January 27, 1926, the Illinois Life Insurance
Company issued a policy of "term insurance" to
George B. Breault in the amount of $10,000. The
insured paid all premiums on this policy when they
become due except the premium which became due
January 27, 1933. On November 28, 1932, a receiver
was appointed for the insurance company by the
United States district court for the northern dis-
trict of Illinois, eastern division, and on July 22,

1933, the district court entered a decree authorizing the Illinois Life Insurance Company to execute a contract of reinsurance with the defendant, Central Life Assurance Society. This contract imposes a lien upon certain policies of insurance in the following language:

SEC. 10. "There being a present impairment of the reserves of the Illinois Life, it is necessary to place a lien against each policy reinsured hereunder. Inasmuch as it is impracticable to apply the lien directly to some policies, the liability with respect thereto is herein modified. As to those policies to which the lien is affixed, there is created and hereby established and fixed an obligation similar to a policy loan in addition to any existing policy indebtedness."

The amount of the lien is 70 per cent. of the net equity of each policy of insurance in effect November 28, 1932. The terminal reserve applicable to the policy of insurance in the case at bar would extend the policy of George B. Breault up to July 17, 1933, but if the 70 per cent. lien is applied it would exhaust the "terminal reserve" and the policy would lapse prior to the date of death of the insured which was June 6, 1933.

It is the claim of plaintiff that the policy of insurance was continued in force by reason of the fact that the "terminal reserve" was sufficient to continue the policy in full force and effect until July 17, 1933; and that the following paragraph of the insurance policy and section 15 of the reinsurance contract apply to the facts in the instant case:

"Should the insured fail to pay any premium hereon, after premiums for three years have been paid, the company will, without any action on the part of the insured, continue this policy in force for the num-

ber of days from the original due date of the unpaid premium for which the then reserve on this policy, less one-ninth part thereof, applied as a net single premium will purchase term insurance for the face amount of this policy; said net single premium and the reserve to be computed according to the American experience table of mortality, and three and one-half per cent. interest. The company will revive and reinstate this policy at any time within five years of the date of default, upon being furnished with evidence satisfactory to it of the then insurability of the insured and payment of arrears of premiums or reinstatement of any other indebtedness, with interest at the rate of five per cent. per annum.''

Section 15 of the reinsurance contract reads as follows:

''The company will either waive or reinsure the policy lien and will not deduct the lien from claims arising out of death occurring on and prior to December 31, 1938. As to claims for death thereafter occurring the whole or any part of such lien shall either be waived or reinsured during any year, to the extent that at the end of the preceding year the unappropriated accumulated net earnings upon the business of the Illinois Life are sufficient for such purpose. An exception to the foregoing provisions is made in paragraph 30 applicable to the policies therein described. The cost of any such waiver or reinsurance shall be charged as an expense of the business reinsured.''

Defendant insurance company contends that section 15 applies only to policies where the premiums have been paid and not to policies that are in force under the extended insurance feature of the policy; and that section 33, relative to policies lapsed after

November 28, 1932, is the pertinent and applicable section.

In construing a somewhat similar reinsurance contract the supreme court of Kentucky in *Casteel* v. *Kentucky Home Life Ins. Co.*, 258 Ky. 304 (79 S. W. [2d] 941), said:

"In this position it is correct if the insured accepted the contract. If he did not accept the contract, in that event the Kentucky Home Life did not assume or undertake to carry his policy and the only duty it owes him is an accounting for such reserve as came to its hands by reason of having purchased the assets of the insolvent company, and in this event, as we have stated, the insured was entitled to such portion of the reserve in his policy as the whole amount of assets bears to amount of liabilities of the insolvent company as any ordinary creditor would share the assets of an insolvent. * * *

"But if the assets of an insolvent company are sold to another which undertakes to assume the contracts and obligations of the insolvent company (as was done in the present case), the rights of the policyholders in the insolvent company must be determined by the contract between the buying company, the receiver or other authorized representative of the insolvent company, and the policyholders."

In *Balyeat* v. *American National Ins. Co.*, 274 Mich. 694, this court said:

"Like most other insurance contracts, the policy is divided into subjects, each governing a specific condition. It must be read as a whole and a provision affecting a particular condition be applied to modify a provision covering the condition only partly. Also, the automatic extended insurance clause requires such application because the benefit thereunder depends upon the 'conditions which would

otherwise entitle the insured to one of the options above set forth.' ''

In construing section 15 of the reinsurance contract, we must take into consideration the following sections:

"33. Any policy which shall have lapsed after November 28, 1932, and shall not have been reinstated shall be limited to the automatic provision contained in such policy for such amount as at the time said policy lapsed the net equity of such policy less (a) any surrender charge provided for therein, and (b) the policy lien, will purchase and shall not be subject to the lien. In case of extended insurance it shall be for the face of the policy less (a) any policy indebtedness, and (b) less the policy lien.

"34. The lien percentage applicable to such policy shall be the lien percentage adjusted as of December 31, 1933, except that if the lapse shall occur after December 31, 1933, the lien percentage as theretofore last adjusted shall apply. In event of a death claim occurring on any policy which lapsed between November 28, 1932, and December 31, 1933, the lien percentage of 70 per cent. shall be used to determine whether or not such policy had sufficient value to maintain it in force until the date of death.''

We are of the opinion that section 15 relates to policies upon which no default in payment of premium had occurred and which were in effect at the time of the death of the insured, while sections 33 and 34 relate to contracts of insurance that have lapsed after November 28, 1932, and have not been reinstated. When plaintiff's insured failed to pay any premiums on his policy after January 27, 1932, his policy lapsed and on November 28, 1932, the reserve in the policy was the sum of $123.90 subject, however, to an indebtedness of 70 per cent. as con-

tained in the reinsurance contract. This lien exhausted the terminal reserve under the policy and left the insured without any automatic extended insurance at the time of his death.

The judgment of the lower court is affirmed. Defendant may recover costs.

North, C. J., and Fead, Wiest, Butzel, Bushnell, and Toy, JJ., concurred. Potter, J., took no part in this decision.