## Kentucky Home Life Ins. Co. v. Miller.

(Decided April 23, 1937.)

WOODWARD, DAWSON & HOBSON and L. H. HILTON for appellant.

LUKINS & JONES and HENRY M. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

On April 8, 1932, at the instigation of the insurance commissioner of Kentucky, the Franklin circuit court granted a restraining order enjoining the Inter-Southern Life Insurance Company from conducting an insurance business until the further orders of that court. On April 11, 1932, the injunction was modified to the extent, among other things, that the company could collect and receive premiums or other sums due to it. On April 16, the injunction was further modified by authorizing the temporary receivers to receive and segregate sums due the company. On August 8, 1932, a reinsurance agreement was approved by the Franklin circuit court whereby the appellant, Kentucky Home Life Insurance Company, agreed to assume various liabilities of the Inter-Southern Life Insurance Company, including its policies of insurance, under the terms and conditions therein set out. See Casteel v. Kentucky Home Life Insurance Company, 258 Ky. 304, 79 S. W. (2d) 941; Kentucky Home Life Insurance Company v. Miller, 262 Ky. 330, 90 S. W. (2d) 59.

On November 15, 1930, Jesse W. Miller, of Mauckport, Ind., took out a policy of life insurance in the amount of $2,000 in the Inter-Southern Life Insurance Company and paid the initial premium thereon of $102.36. On November 15, 1931, the insured failed to pay the second annual premium and permitted the grace period to elapse. On January 6, 1932, the insured

applied for reinstatement and paid $15.36 in cash, executing a "blue note" in the sum of $87, due February 15, 1932, for the balance. On February 15, 1932, insured paid $16.67 on the note, and the balance of $71.64 was extended to March 15, 1932. On March 15, 1932, insured paid $17.03, and the balance of $54.97 was extended to April 15, 1932. Excluding the interest paid on this note, insured had paid the sum of $47.39 up to and including March 15, 1932. When the last extension of the "blue note" expired on April 15, 1932, the proceedings which ultimately resulted in a receivership for the Inter-Southern Life Insurance Company were then pending and the insured made no payment on the note at that time.

The insured applied to the receivers of the Inter-Southern on June 18, 1932, for a reinstatement of his policy. In his application for reinstatement, he set out that he was in good health and made various other representations which are claimed to have been false and fraudulent. He paid the balance due on the premium on July 15, 1932, and his policy was reinstated conditioned upon the truth of the representations contained in the application for reinstatement. The proof conduces very strongly to prove that the representations contained in the application were in fact false and fraudulent, but it is claimed by appellee that this is entirely immaterial because of the fact that the payments made through March 15, 1932, were sufficient to carry the policy on extended insurance beyond the date of the death of the insured. This was the view evidently taken by the trial court and resulted in a peremptory instruction being given for the plaintiff.

The insured died on August 29, 1932, just three weeks after the reinsurance agreement between the Inter-Southern Life Insurance Company and the Kentucky Home Life Insurance Company had been approved by the Franklin circuit court.

In Kentucky Home Life Insurance Co. v. Miller, 262 Ky. 330, 90 S. W. (2d) 59, a controversy between these same parties arose on a $7,000 policy on the life of Mr. Miller, and it was held that the insurance involved in that case was in force as extended insurance at the time of Mr. Miller's death. Two full years' premiums had been paid, which therefore entitled the insured to extended insurance under the terms of the

policy itself to the extent authorized in the table of loan and surrender values therein set out.

In the case at bar, on the other hand, the insured had paid only $47.39 on his second premium of $102.36, unless we are to count in the amount subsequently paid pursuant to the alleged fraudulent application for reinstatement. It is claimed on behalf of appellee that we must give effect to the partial payment of the second year's premium in pro tanto creating a reserve, and that, when this is done, the reserve is sufficient to carry the policy on extended insurance one day beyond the date of Mr. Miller's death. It is argued that it is therefore immaterial whether or not any fraudulent misrepresentations are contained in the application for reinstatement, that the original policy was in force anyway, and such representations were purely gratuitous and of no avail one way or the other.

The difficulty with this contention is that there is no provision for extended insurance in the policy until "after two full years' premiums shall have been paid." The provisions of section 659 of the Statutes do not touch the question here for the reason that the reserves there referred to relate to options after three full annual premiums have been paid. If, therefore, the insured is entitled to any reserve or any extended insurance upon the payment of a part only of the second year's premium, it must be because of some provision in the contract according him that right.

In the section of the policy dealing with loan and surrender values it is provided, among other things, that "if fractional premiums in addition to premiums for whole years be paid, due allowance will be made in the above benefits." It is claimed by appellee that this provision justifies her figures on fractional reserves and fractional extended insurance on the part payment of the second annual premium. Clearly, however, the provision cannot thus be divorced from its context. The "above benefits" to which it refers are the loan and surrender values set out in the table. No provision is made in the table for any benefits before two years' premiums have been paid. Obviously, therefore, there is nothing in the policy from which we might infer a promise on the part of the insurance company to grant extended insurance for any period before the

payment of two full annual premiums. Any possible doubt on this score is eliminated when we read the paragraph dealing explicitly with the extended insurance features of the policy, where it is provided:

"If there be any default in the payment of premiums after two full years' premiums shall have been paid, in such event the insurance hereunder shall from the due date of such premium automatically continue as term insurance for the period stipulated in the Table of Guaranteed Values."

The reference to two full years' premiums plainly negatives any construction of the policy which would accord extended insurance on a payment of less than the whole second annual premium.

It is not argued by appellee that the statements contained in the application for reinstatement were not false. Indeed, she made no effort to refute the evidence of the insurance company in this particular. She asserts, however, (1) that the insolvency of the Inter-Southern Life Insurance Company relieved the insured of the necessity of making further premium payments, and (2) that the receivers of the Inter-Southern were without authority to demand an application for reinstatement, and it is therefore immaterial whether or not the representations contained in the application were fraudulent. She leans heavily upon the decision of this court in Jones v. Life Association of America, 83 Ky. 75, 7 Ky. Law Rep. 1. That case turned on a question of the sufficiency of the allegations of the petition to constitute a cause of action. It was alleged that the company had "ceased to do business" and there was no place where a premium could be paid. In holding the petition good, this court, through Judge Pryor, based its decision upon the anticipatory breach by the company of its obligations under the contract, saying:

"Here the company or the party representing it is claiming a forfeiture by reason of the non-payment of the premium, and at the same time admitting that if the money had been paid it could not have complied with its contract.

"Such a defense will not be permitted in a court of equity, and the court below should have

overruled the demurrer requiring the defense to make an issue, and upon a failure to do so a judgment should have been rendered for the plaintiffs. The extent of the recovery is a question not presented by the record."

It will be noted that the question of the amount of recovery was left open. Plainly, the court did not conceive that the face of the policy was the measure of damages. The case at bar differs from the Jones Case in several particulars. In the first place, it is not a suit against the insolvent insurance company, but against the reinsurer on its contract of reinsurance together with the policy. In the second place, it is an attempt specifically to enforce the contract by obtaining the full face value of the policy, and not simply damages for the breach of contract by the Inter-Southern. In the third place, it is here shown without dispute that on that date when the note fell due the receivers of the Inter-Southern were specifically authorized to receive and impound premiums falling due pending the receivership, in order that insurance might be continued in force until a scheme of reorganization could be effected. As pointed out in Casteel v. Kentucky Home Life Insurance Co., 258 Ky. 304, 79 S. W. (2d) 941, upon the insolvency of the Inter-Southern the policyholder became entitled to his proportionate share in the reserve or cash value, if any, of his policy during his lifetime against the estate of the defunct company. Clearly, if a policyholder chose to continue or to reinstate his insurance with the successor company, he could do so only in accordance with the terms of his policy and of the reinsurance contract. He could not claim both under and against that agreement. If the insured desired to continue his insurance as such, it was incumbent upon him to tender his premium when it fell due. Otherwise, as in the Casteel Case, his rights were simply those of a creditor against the insolvent estate of the Inter-Southern.

The policy here involved lapsed upon the failure of the insured to pay or tender the amount due on his premium. Since, as we have seen, there was no reserve on this policy until two full years' premiums had been paid, the only damage suffered by the insured was the possible loss of protection during the period for which he had actually paid. If he chose to reinstate his

insurance during the receivership under the hope of a reorganization, it seems plain that he could do so only in accordance with customary insurance practices. Certainly, if the receivers of the Inter-Southern had authority to reinstate the policy at all, they likewise had authority to demand an application for reinstatement with the customary certificate of good health. The insured had no right to demand reinstatement by the receivers otherwise than he could have demanded against the company itself. It follows that before appellee can rely on the reinstatement of the policy, she must answer the charge of fraud in the representations made in the application for reinstatement. The application was an integral part of the steps taken to reinstate the policy. The reinsurance agreement between the appellant and the receivers of the Inter-Southern expressly reserved to appellant all the defenses to policies which the Inter-Southern itself had. It follows, therefore, that the trial court erred in directing the jury to return a verdict for the plaintiff.

Judgment reversed.