## Kentucky Home Life Ins. Co. v. Marks.

(Decided Sept. 27, 1938.)

L. H. HILTON and WOODWARD, DAWSON & HOBSON for appellant.

HENRY M. JOHNSON and JOSEPH W. CAMBRON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The life of Mrs. Pearl Marks was insured by the Inter-Southern Life Insurance Company for $1,000. The premium due July 11, 1932, was not paid. Mrs. Marks died March 13, 1933. The judgment appealed is in favor of the beneficiary, the insured's husband, against the Kentucky Home Life Insurance Company, successor of the Inter-Southern Life Insurance Company.

On April 8, 1932, the Insurance Department of the State caused a suit to be filed in the Franklin Circuit Court for the appointment of a receiver for the Inter-Southern Life Insurance Company upon the ground of insolvency. Receivers were appointed and on August 8, 1932, judgment was entered approving an agreement made between the receivers and the Kentucky Home Life Insurance Company, by which the latter took over the assets of the Inter-Southern Life Insurance Company and assumed its liabilities in part and contingently. This re-insurance contract was before the court in Casteel v. Kentucky Home Life Insurance Company, 258 Ky. 304, 79 S. W. (2d) 941; Kentucky Home Life Insurance Company v. Miller, 262 Ky. 330, 90 S. W. (2d) 59; Kentucky Home Life Insurance Company v. Kittinger, 262 Ky. 525, 90 S. W. (2d) 673, 103 A. L. R. 1361; Kentucky Home Life Insurance Company v. Johnson, 263 Ky. 787, 93 S. W. (2d) 863; Kentucky Home Life Insurance Company v. Miller, 268 Ky. 271, 104 S. W. (2d) 997. The pleadings in this case brought the construction and application of that contract before the court.

When the attorney for the plaintiff had completed his statement of the case to the jury the defendant moved for a directed verdict on the statement. The plaintiff had maintained his right to recover upon any one of four grounds. During the consideration of the motion it was agreed that if plaintiff's contention was sound in respect of his rights under the extended insurance provisions of the policy as modified by the re-insurance agreement—a fact made certain by the pleadings and exhibits—the court should determine the case as a matter of law. This the court did and directed a verdict for the plaintiff. The question before us, therefore, is narrowed by the concession and sensible action thus taken by the court and counsel.

Clause 4 of the re-insurance agreement by which a lien was established against all reserves deals with three classes, namely: (1) Policies that were in full force and

effect on August 8, 1932; (2) policies that were in force as paid-up insurance; and (3) policies that were in force as extended insurance for a specified period. Under the interpretation put upon this clause by the defendant, if this policy was of the first class on August 8, 1932, it is not liable, but if the policy was of the third class, that is, was automatically running as extended insurance, then its liability continued up to and including the date on which the insured died, which was 245 days after July 11, 1932, when the premium was due. The intricacies of the contracts are themselves sufficient to suggest that we accept the parties' interpretation and make no endeavor to disclose or explain this apparent anomaly—that the appellant is not liable if the policy was in perfect and complete operation, with no lapsing for want of payment of premium, but that it is liable because the insured had failed to pay that premium when due if the consequence be considered alone. We proceed upon the acceptance of the concessions to the determination of the legal status of the policy of August 8, 1932.

The policy provides:

"The insurance hereunder is based upon an annual premium payable in advance. One month (not less than thirty days) of grace, during which time this policy shall be continued in force, will be allowed in payment of all premiums or installments thereof after the first. If the death occurs within the days of grace or during the period covered by any installment, if the premium is payable in installments, any unpaid premium or installment thereof for the then current policy year shall be deducted from the amount payable hereunder."

Other important terms appear in the policy before this clause. It is stipulated that "upon any default in payment of premiums this policy may be surrendered to the company prior to the expiration of the period of grace."

If surrendered, the insured was given several options. One was, "(a) have the insurance extended for the full amount of the policy without the right to loans or surrender values." The period of extensions is set forth in a table following, a part of which is, "the extended insurance provided under option 'A' includes the period of grace allowed for payment of premiums."

It was further provided that:

"If the insured shall fail to pay any premium when due, or within the period of grace, and shall not have exercised any of the foregoing options, the Company, subject to the other conditions of the policy, shall grant the extended insurance hereinbefore provided."

Not only does the contract specify that the extended insurance shall begin as of the due date of the premium defaulted but (with perhaps some particular exceptions) that is in accord with insurance economics and general law. Life & Casualty Insurance Company of Tennessee v. Wheeler, 265 Ky. 269, 96 S. W. (2d) 753, 106 A. L. R. 1270. Cf. Inter-Southern Life Insurance Company v. Omer, 238 Ky. 790, 38 S. W. (2d) 936. In Ratliff v. Kentucky Home Mutual Life Insurance Company, 87 F. (2d) 965, the U. S. Circuit Court of Appeals, 5th Circuit, construed a policy issued by the Inter-Southern and re-insured by the Kentucky Home Life Insurance Company and later by its successor, Kentucky Home Mutual Life Insurance Company, the terms of which as to extended insurance are identical with those before us except that interest on defaulted premiums paid during the grace period was collectible and there was omitted the clause: "The extended insurance provided in option 'A' includes the period of grace allowed for payment of the premium." Upon reason and authority (including our Wheeler Case, supra) the court expressly held that the automatic extended insurance ran from the date the premium matured and not from the end of the grace period. In the Wheeler Case the policy provided that extended insurance (without right to loans or cash surrender value) should run from the date of default, and we held the grace period and extended insurance ran concurrently from that date.

The appellant contends that since there could have been no forfeiture of the policy and the premium could have been paid any time during the grace period, including three days after the re-insurance agreement be-became effective, the policy continued as an unimpaired contract; that it was alive in all its original vigor on August 8, 1932, and may not be regarded as the restricted and less valuable contract of extended insurance. So far as its status of being in full force and effect is concerned the appellant is undoubtedly correct. But it does not necessarily follow that any right the

insured or his beneficiary had under the extended provision conception did not also exist. The provision for a period of grace is simply an agreement by the insurance company to give credit and not demand advance payment during that time. When that provision comes into operation the promise to pay at the beginning of the insurance year has already been broken and default or lapse already exists, subject to the qualifications. The policy is already in process of expiring. The insurance company has merely provided that if the insured shall pay the premium during the period it will waive the breach of contract and breathe new life into the expiring policy and restore it to its original force. If the policy-holder does not choose to accept that option or offer during the month, it is as if the privilege had never existed. Since the insured in this case never did so we do not think the court is authorized to accept it retroactively for him long after his death. When the premium became due the State of Kentucky had been contending in the court for three months that the insurance company was insolvent, and this doubtless suggested to the insured the wisdom of not paying the premium. We cannot ignore the reality. We could not justify a conclusion that the contract was not extended insurance even though all its terms were also in full force and effect. There is no provision in the re-insurance agreement to take care of such dual status. Its complexity and the seemingly unfortunate effect upon the rights of all Inter-Southern policy-holders call for the application to its most liberal extent of the rule that insurance contracts are to be given that regard which is most favorable to the insured and his beneficiary and all ambiguities are to be resolved in their behalf. There is likewise the ever present abhorrence of forfeitures. We think the court rightly adjudged the plaintiff entitled to the benefits of the policy.

The judgment is affirmed.